UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| 3M COMPANY, | Case No.  2:20-cv-01096 |
| Plaintiff, | **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | **AND DEMAND FOR JURY TRIAL** |
| AIME LLC, MARK BACIAK, AND MICHAEL BINGHAM, | |
| Defendants. | |

## COMPLAINT

Plaintiff 3M Company ("Plaintiff" or "3M"), by and through its undersigned attorneys, alleges as follows:

## NATURE OF THE ACTION

1.     This lawsuit concerns the ongoing attempts of Defendants AIME, LLC, Mark Baciak, and Michael Bingham (collectively "AIME") to falsely claim that they represent 3M, and their unauthorized use of 3M's name and famous trademarks, to perpetrate a false and deceptive scheme on unwitting customers and consumers during the global COVID-19 pandemic.

2.     Defendants seek to benefit from 3M's good reputation to dupe unsuspecting individuals and healthcare entities to pay money for 3M N95 respirators that Defendants

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 1

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

cannot deliver. Defendants' motivation is to profiteer from our national crisis. Defendants have repeatedly claimed false affiliations with 3M that violate not only 3M's rights under the Lanham Act, and Washington statutory and common law, but also potentially run afoul of criminal law.

3. From all reports, Defendants are still at it. 3M brings this action to ask this Court to put a stop to Defendants' continuing unlawful and unethical activities, to protect the public from the fraud, and to protect 3M's name and reputation from being associated with Defendants' scam.

4. Beginning in April 2020, some of 3M's customers became confused by and concerned with AIME's offers to sell a large volume of 3M brand N95 respirators at grossly inflated prices, and their attempts to suggest a connection with 3M. These customers contacted 3M to investigate the truth of AIME's claims and expressed concerns of fraud. In response, 3M investigated Defendants and learned that Defendants were misleading the public and engaging in price gouging.

5. Specifically, Defendants have marketed themselves to their potential customers, including hospitals, first responders, government entities, and other healthcare providers, as having access to millions of 3M N95 respirators, which they do not possess, and attempting to sell these respirators to customers by asserting a close relationship with and direct access to 3M, which they do not have. Defendants have sought millions in dollars of payments from their potential victims. Defendants created misleading paperwork that misrepresented the purchase process for 3M respirators and falsely claimed that 3M was involved in the transaction. When 3M approached Defendants regarding its concerns that Defendants may have received counterfeit products or may have been tricked by another entity, Defendants brazenly reiterated their false claims to 3M employees and continued to make false representations about their affiliation and access to 3M respirators and 3M's processes with respect to the critical supply of respirators.

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 2

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

6.      At this time, it is unknown how much money Defendants may have received based on their false representations to hospitals, first responders, government entities, and other healthcare providers. It is also unknown how many customers have in fact been confused by AIME's scam.

7.      In using 3M's name in association with their scheme, Defendants have illegally used 3M's trademarks in violation of the Lanham Act in order to enrich themselves. Defendants' improper use and false representations are actively harming 3M's brand, goodwill, and reputation. Similarly, Defendants' false claims of a business relationship and affiliation with 3M in connection with Defendants' scheme to profiteer from the pandemic damage 3M's name, brand and reputation, in violation of the Lanham Act, and Washington state unfair competition and fraudulent business practices laws.

8.      Defendants also have engaged in price gouging by selling 3M's N95 1860 respirator at a price close to four times higher than 3M's list prices, in violation of Washington's Consumer Protection Act.

## **BACKGROUND**

9.      Throughout its history, 3M has provided state-of-the-art, industry-leading scientific and medical products to consumers throughout the world under its famous 3M name and 3M trademarks. Based on this longstanding, continuous use, consumers associate the 3M trademarks uniquely with 3M. Now, more than ever, consumers are also relying on the famous 3M name and 3M trademarks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect over the past century. This is especially true with respect to 3M's numerous industry-leading healthcare products and PPE, including 3M-brand N95 respirators.

10.      Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19. To assist in the battle, 3M is working around the clock to supply healthcare workers, first responders, and critical infrastructure operators

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

with millions of 3M-brand respirators. Beginning in January, 3M began increasing its production of 3M-brand respirators, doubling its global output to a current rate of 1.1 billion per year, or 100 million per month. In the United States, 3M is producing respirators at a rate of 50 million per month (well over a million per day), and will reach a rate of more than 95 million per month by October 2020. 3M also is investing in the capital and resources to enable it to double its respirator production capacity once again, to 2 billion globally before the end of 2020. To supplement its U.S. production, 3M is also importing at least 222 million 3M-brand respirators from 3M's production facilities overseas. In the United States, the majority of 3M's respirators are going to healthcare and public health users, with the remaining deployed to other critical industries such as energy, food, and pharmaceuticals. The U.S. distribution of 3M-brand respirators is being coordinated with the Federal Emergency Management Agency, which is basing allocation decisions on the most urgent needs.

11.    The demand for 3M-brand respirators has grown exponentially in response to the pandemic, and 3M has been committed to seeking to meet this demand while keeping its respirators priced fairly. 3M is working with customers, distributors, governments, and medical officials to direct 3M supplies to where they are needed most. Importantly, 3M has not and will not increase the prices that it charges for 3M respirators as a result of the COVID-19 outbreak.

12.    In the midst of these efforts by 3M and the global health community to respond to the pandemic, certain bad actors have sought to exploit the crisis and prey on innocent parties through a variety of scams involving 3M-brand N95 respirators and other health-related products in high demand. These scams include unlawful price-gouging, fake offers, counterfeiting, and other unfair and deceptive practices—all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

13.    In response to fraudulent activity, price-gouging and counterfeiting related to 3M N95 respirators that has spiked in the marketplace during the pandemic, 3M is taking an

active role to combat these activities. 3M's actions include working with law enforcement authorities around the world, including the Department of Justice, state Attorneys General, the Federal Bureau of Investigation, the U.S. Attorney General, and local authorities to combat price-gouging and other unlawful activities. 3M has established a dedicated point of contact for federal and state procurement officials to promptly validate third-party offers and quotes. In doing so, 3M has already helped prevent countless potentially fraudulent transactions with federal agencies, state governments, municipal governments, private enterprises and other organizations. Every U.S. state attorney general office has been briefed on 3M's efforts, and 3M is in regular contact with numerous governors and state attorneys general regarding these efforts to prevent and combat fraud. The Department of Justice has publicly thanked 3M for the assistance it has provided in investigations that have led to arrests. *See* Press Release: New Jersey Man Arrested For $45 Million Scheme To Defraud And Price Gouge New York City During COVID-19 Pandemic, *available at* https://www.justice.gov/usao-sdny/pr/new-jersey-man-arrested-45-million-scheme-defraud-and-price-gouge-new-york-city-during (May 26, 2020). 3M has provided information relating to the instant case to federal and state law enforcement as well.

14.     3M has also created a website where people can report potential price-gouging and a "3M COVID-19 Fraud hotline" where end-users and purchasers of 3M products in the United States and Canada can call for information and to help detect fraud and avoid counterfeit products. 3M is also publishing information about its anti-price-gouging and counterfeiting efforts on 3M's website, including disclosure of 3M's list prices for its N95 respirators so that customers can identify and avoid inflated prices, and the web address and phone numbers that can be used to identify 3M's authorized distributors and dealers in the United States and Canada. Further information about 3M's efforts are set forth at https://www.3m.com/3M/en_US/worker-health-safety-us/covid19/covid-fraud/ and in the 3M press release and publication attached hereto as **Exhibits 1-3**.

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 5

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

15.     A key component of 3M's efforts to combat fraud, price gouging, and counterfeiting has been the removal of bad actors through policing their activity on the internet. 3M has successfully secured the removal of more than 7,000 websites and sales offers with fraudulent or counterfeit product offerings from online marketplaces around the world, more than 10,000 false or deceptive social media posts, and more than 140 deceptive internet addresses.

16.     Including this action, 3M has filed 18 lawsuits in various courts in its fight against fraud, price gouging, and counterfeiting. 3M has won five temporary restraining orders and four preliminary injunction orders from courts across the country that put a stop to other defendants' unlawful and unethical profiteering from the pandemic, and has reached numerous settlements in other matters where the defendants have signed written agreements unequivocally agreeing to immediately cease their misconduct, often including consent judgments. 3M has also recovered money through several settlements. Any recovery obtained in pursuing these suits (including the case at bar) will be donated to charitable COVID-19 relief efforts.

17.     Despite 3M's extensive efforts to combat fraud during this crisis, pandemic profiteers continue to prey on and deceive consumers, including front-line healthcare workers, first responders, and others in a time of need, trade off the fame of the 3M name and 3M trademarks, and falsely associating themselves with 3M and its reputation for providing high quality PPE at fair prices. Defendants' unlawful scheme to enrich themselves during the current global health crisis exemplifies pandemic profiteering. 3M does not—and will not—condone bad actors deceptively trading on the fame and goodwill of the 3M brand and trademarks for their personal gain. 3M is committed to working to address and prevent the exploitation of the surge in demand for 3M-brand products during this historic health crisis.

18.     Accordingly, to further protect the public from Defendants' fraud and pandemic profiteering, to reduce the amount of time and precious resources healthcare providers and

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

procurement officers are forced to waste interacting with such schemes, as well as to forestall any further diminution of the 3M name, 3M trademarks, reputation, fame, and goodwill, 3M brings this lawsuit against Defendants for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, unlawful, unfair, and fraudulent business acts and practices. 3M also seeks preliminary and permanent injunctive relief. Any monetary award recovered by 3M will be donated to charitable COVID-19 relief efforts.

## THE PARTIES

19.     Plaintiff 3M Company is a Delaware corporation, with its principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of PPE, such as 3M-brand N95 respirators.

20.     AIME, LLC, also referred to as AIME USA, is a Washington limited liability company with its headquarters and principal place of business in Bellevue, King County, Washington. AIME uses the domain name http://aimeusa.com/. On that website, AIME claims that it only sells authentic products with proper government certifications for COVID-19. It further asserts "[f]rom first responders to medical professionals, to essential workers, AIME is here to provide a suite of products and services that allow you to do your job without worrying about where your equipment came from or when you'll be able to get more." AIME was formed on February 5, 2020, and registered its internet domain name on March 19, 2020. AIME is **not** one of 3M's authorized distributors. 3M has not added any new authorized distributors of its respirators since the beginning of the pandemic, which began in January of 2020. In its investigations, 3M has seen many new entities, such as AIME, seeking to cynically exploit this humanitarian crisis.

21.     Mark Baciak is a Washington resident, who on information and belief, owns and operates AIME. Baciak holds himself out as AIME's chief executive officer and his name

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

appears on AIME's registration documents with the State of Washington. Baciak's LinkedIn page states that he is a technology "Pioneer" and a "Business Transformation Agent." In recent years, he asserts that he has been involved in several technology startups at high levels.

22.     Based on information and belief, Michael Bingham is a Washington resident who owns and operates AIME, LLC. Bingham advertises himself as AIME's chief operating officer.

23.     Upon information and belief, each Defendant is, and at all relevant times has been, the agent and representative of the other Defendants; and each Defendant at all relevant times acted, and each continues to act, with the knowledge and consent of all other Defendants; and each Defendant is liable for the acts and omissions of the other Defendants.

## JURISDICTION AND VENUE

24.     The claims for unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 et seq. Accordingly, this Court has original subject-matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b), and 15 U.S.C § 1121(a).

25.     This Court has subject matter jurisdiction on the separate and independent ground of diversity of citizenship under 28 U.S.C. § 1332 because 3M is not a citizen of Washington, but Defendants are, and the amount in controversy exceeds $75,000.

26.     This Court has supplemental jurisdiction over all the state law claims under 28 U.S.C. §§ 1338(b) and 1367(a) because they arise from the same case or controversy as the Lanham Act claims.

27.     This Court has personal jurisdiction over each Defendant because each Defendant has purposefully availed itself of the privilege of transacting business in this District. Each Defendant has also committed and intentionally directed tortious acts towards

/ / /

---

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 8

residents in this District. 3M's claims arise out of and relate to Defendants' transactions of business, and tortious acts committed in this District.

28.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because each of the Defendants is a resident of this judicial district and of the State of Washington; and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

29.     3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M offers over 60,000 products, ranging from household and school supplies, to industrial and manufacturing materials, to critical medical supplies and protective equipment.

30.     3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more. Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

31.     The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and many more. As a result, 3M-brand products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

32.     Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 9

"3M" and the 3M logo shown below (together, and as described more particularly in paragraph 36 below, the "3M Trademarks"):



33.     For decades, products offered under the 3M name and 3M Trademarks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators). Indeed, in 2019 alone, sales by 3M exceeded 30 billion dollars, with the vast bulk of such products sold under and in connection with the 3M Trademarks.

34.     Over the same period of time, products offered under the 3M name and 3M Trademarks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

35.     Based on the foregoing, consumers associate the 3M Trademarks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Trademarks. Based on the foregoing, the 3M name and 3M Trademarks have also become famous among consumers not only in Washington but throughout the United States.

36.     To strengthen 3M's common-law rights in and to its famous 3M Trademarks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M trademark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration"). *See* **Exhibits 4-6**.

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 10

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

37.     Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register.

38.     Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Trademarks; (ii) the validity of the 3M Trademarks; (iii) the validity of the registration of the 3M Trademarks; and (iv) 3M's exclusive right to use the 3M name and 3M Trademarks throughout the United States for, *inter alia*, respirators.

39.     3M's famous name and the 3M Trademarks do more than identify 3M as the exclusive source of goods and services offered thereunder. Indeed, the famous 3M name and 3M Trademarks also signify to consumers that 3M-brand products offered are of high quality and adhere to the strict quality-control standards. Now, more than ever, consumers rely on the famous 3M name and 3M Trademarks' ability to signify that products offered under the 3M name and 3M Trademarks are of the same high quality that consumers have come to expect of 3M over the past century.

    i.     ***3M's Extensive Efforts to Assist with the Battle Against COVID-19***

40.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. As 3M states on the homepage of its website, it is "committed to getting personal protective equipment to healthcare workers."

41.     Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are its 3M-brand N95 respirators.

/ / /

/ / /

/ / /

/ / /

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 11



42.     Authentic 3M-brand N95 respirators reduce exposure to airborne biological particles and liquid contamination when appropriately selected, fitted, and worn.

43.     Inset, below, is an image of Plaintiff's 3M-brand, N95 Model 1860 respirator, the model at issue in this litigation:



44.     Based on the exponential increase in demand for 3M-brand N95 respirators, 3M has invested in the necessary capital and resources to double its annual production of 1.1 billion N95 respirators. *See* Exs. 1-3. **What 3M has *not* done in the face of the global COVID-19 pandemic is increase its prices**. *See id.*

45.     Unfortunately, 3M's sense of civic responsibility during this time of crisis is not universally shared and bad actors are seeking to exploit the increased demand for 3M-brand N95 respirators. These opportunists advertise and sell counterfeit, damaged, deficient, or

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 12

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

otherwise altered versions of 3M's genuine N95 respirators consumers seeking to protect their health. In some cases, bad actors advertise 3M-brand N95 respirators without any intention to supply product at all.

46.    To protect both consumers and healthcare workers on the front lines of the COVID-19 battle from deception and inferior products, to reduce time wasted by healthcare providers and procurement officers on scams, as well as to protect 3M's goodwill, reputation, and carefully curated 3M brand, 3M is working diligently with law enforcement, retail partners, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirators. For example, in late March 2020, 3M's Chief Executive Offer, Mike Roman, sent a letter to U.S. Attorney General, William Barr, and the President of the National Governor's Association, Larry Hogan of Maryland, to offer 3M's partnership in combatting price-gouging. As shown in the inset image, additional examples of 3M's efforts to combat price-gouging, counterfeiting, and other unlawful conduct during COVID-19 include:

    a.    3M posted on its website the list price for its 3M-brand N95 respirators so that consumers can readily identify inflated pricing (*see* **Exhibit 7**);

    b.    3M created a form on its website that consumers can use to report suspected incidents of price-gouging and counterfeiting (*see* **Exhibit 8**); and

    c.    3M created a fraud "hotline" that consumers can call to report suspected incidents of price-gouging and counterfeiting.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 13

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600



**A. COVID-19 Facts**

47.      In early January 2020, the World Health Organization ("WHO") learned of a cluster of pneumonia-like symptoms in Wuhan, China.

48.      On January 9, 2020, the U.S. Centers for Disease Control ("CDC") noted the discovery of a novel coronavirus (now known as COVID-19) outbreak in Wuhan, China. Within the next few weeks the U.S. began to increase screening measures at certain airports.

49.      On or about January 20, 2020, the first confirmed COVID-19 case in the U.S. was discovered in Snohomish County, Washington.

50.      On January 23, 2020, the Chinese government locked down Wuhan because of concerns over COVID-19.

51.      On January 30, 2020, the WHO issued a notice of a public health emergency of international concern. Secretary of Health and Human Services, Alex Azar, issued a public health emergency the next day.

52.      Around this time, demand for 3M-brand N95 Respirators increased exponentially. Hospital, governments, and first responders reported shortages. Quickly, 3M discovered that some of the problems resulted from people hoarding their respirators and price gouging potential customers.

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 14

**B. Defendants' Unlawful Conduct**

53.     AIME, LLC was founded by Baciak on February 5, 2020, just a week after the World Health Organization declared COVID-19 to be a public health emergency and mere weeks after the first case in the United States was discovered fewer than thirty miles from AIME's headquarters.

54.     According to its website, AIME sells personal protective equipment to governments, health care facilities, and first responders.

55.     Based on information and belief as well as his LinkedIn page, Baciak had no prior experience in procuring or selling personal protective equipment.

56.     Facing increasing demand, by February 5, 2020, 3M confirmed and reiterated its policy to sell its N95 respirators to its *authorized distributors only*.

57.     None of the Defendants are authorized distributors of any of Plaintiff's products.

58.     Despite not having direct access to 3M products, Defendants began to inform their potential customers that they had access to more than 500 million units. This is a ludicrous claim—3M's *annual* production at that time was approaching 1.1 billion and will reach 2 billion by the end of 2020. The idea that a brand new company would have between half and a quarter of all of 3M's global production is absurd.

59.     Defendants sent emails to potential customers stating that they could sell between one million and ten million 3M 1860 Respirators made in the U.S. for the inflated price of $2.00 per mask. This product would be delivered through Medline, one of 3M's major and trusted authorized distributors.

60.     In late May, 3M learned that Defendants offered similar terms to other potential customers, but had increased their price per unit to $3.00. Defendants have also offered the product to other customers for $6.95 per unit, vastly above the list price.

/ / /

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 15

61.     3M's list price for its N95 Model 1860 respirators, the model at issue in this litigation, is $1.27 per unit. 3M has not changed the prices charged for 3M respirators as a result of the COVID-19 outbreak. *See* Ex. 7.

62.     Defendants attached 3M product description materials to some of their emails to their potential customers.

63.     On information and belief, in a document produced by Defendants entitled "3M Sourcing Process and Guidelines," Defendants falsely claimed that 3M representatives would be involved in various steps of the sale of the N95 respirators, including providing forms for the purchase, approving the sales, issuing purchase orders and contracts, and having "[l]awyer-to-[l]awyer" conversations about the sale. Through this document, Defendants also claimed that their potential victims could "verify" and "track" their orders on 3M's website. These were all lies.

64.     Defendants demanded a 100%, non-refundable prepayment to AIME, which would be made to an escrow account. AIME claimed it would then transmit 50% of the money paid to 3M for the product. 3M, however, does not require any up-front payment from its end customers—it is paid by its distributors—and 3M has never had any business relationship with AIME.

65.     Defendants' description of the 3M sales process is entirely inaccurate.

66.     In reality, none of Defendants had any relationship with 3M which would have allowed them to make such representations.

67.     None of the Defendants had the right to use Plaintiff's famous 3M trade name or trademarks in their solicitations and marketing materials.

68.     When 3M contacted Defendants about their offers and expressed concerns regarding counterfeit products and fraud, Defendants stated that they had access to the product, but refused to provide documents regarding the source of the product, citing a non-disclosure agreement.

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

69.     3M does not require its authorized distributors to enter nondisclosure agreements. Because the prices are well-publicized, there is no need for secrecy regarding the price or source of 3M respirators. Moreover, 3M's authorized distributors sell to end-users—not to price gouging resellers like AIME.

70.     Based on information and belief, Defendants' marketing efforts were intended to confuse and deceive their potential customers into believing that Defendants are authorized distributors of Plaintiff's products and had an existing relationship with 3M. In other words, Defendants sought to gain legitimacy and a financial advantage by associating themselves with 3M and its famous brand and reputation.

71.     Upon information and belief, Defendants have continued to make these misrepresentations to their potential customers.

72.     Upon information and belief, Defendants have engaged in and continue to engage in price gouging of 3M respirators by marketing and selling 3M-branded N95 respirators for exorbitant prices, while falsely claiming an affiliation and business relationship with 3M.

73.     As a result, Defendants' unlawful acts have caused irreparable harm to 3M's brand as Defendants and similar pandemic profiteers promote an improper association between 3M and its marks and exploitative pricing behavior.

74.     Not only does such unlawful activity further strain the limited resources available to combat COVID-19, but such conduct justifiably has caused public outrage which threatens imminent and irreparable harm to 3M's brand and reputation, as Defendants and similar pandemic profiteers promote an improper association between 3M's Trademarks and Defendants' exploitative pricing behavior.

75.     3M does not—and will not—tolerate individuals or entities deceptively trading off the renown and goodwill of the 3M brand and marks for personal gain. This is particularly

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 17

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic.

76.     Accordingly, to further protect governmental entities, healthcare providers, and consumers from confusion and mistake, to reduce the amount of time and energy that government officials are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M brand and marks' reputation, fame, and goodwill, Plaintiff brings this lawsuit against Defendants for federal and state unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, deceptive acts and practices, and conspiracy.

77.     3M seeks preliminary and permanent injunctive relief. As described below, any damages, costs, or fees recovered by Plaintiff will be donated to charitable COVID-19 relief efforts.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(*Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*)**

78.     3M re-alleges and incorporates the allegations in paragraphs 1 through 77 above as through fully set forth herein.

79.     Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

80.     Upon information and belief, Defendants' use of Plaintiff's famous 3M Trademarks and/or name to advertise, market, offer for sale, and/or sell purported 3M-brand N95 respirators to consumers at exorbitant prices, in general, and during a global pandemic, such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

81.     Defendants have also falsely held themselves out to be an agent of and/or authorized by 3M to sell and/or distribute 3M-branded products and misrepresented that 3M was involved in Defendants' sale process.

82.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by Plaintiff is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health. Such conduct invites public criticism of 3M and the manner in which 3M's respirators are being distributed during the COVID-19 pandemic and risks significant confusion about 3M's role in the marketplace for respirators that help to safeguard public health. Whereas 3M's corporate values and brand image center on the application of science to improve lives, Defendants' conduct imminently and irreparably harms Plaintiff's 3M brand.

83.     3M has been damaged by the acts of Defendants in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

### (*Trademark Dilution Under Section 43(c) of the Lanham Act*)

84.     Plaintiff re-alleges and incorporates the allegations in paragraphs 1 through 77 above as through fully set forth herein.

85.     Plaintiff's 3M Trademarks were famous before and at the time Defendants began using the 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand respirators).

86.     Defendants' use of Plaintiff's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

(including, without limitation, 3M-brand respirators) is likely to dilute the distinctive quality of the famous 3M Trademarks, such that the famous 3M Trademarks' established selling power and value will be reduced.

87.     Defendants' use of Plaintiff's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand respirators) is likely to dilute the distinctive quality of the famous 3M Trademarks, such that the famous 3M Trademarks' ability to identify Plaintiff as the exclusive source of products offered under the 3M Trademarks (including, without limitation, Plaintiff's 3M-brand respirators) will be reduced.

88.     Defendants' use of Plaintiff's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand respirators) at exorbitant prices, especially during a global pandemic, and while falsely claiming a business affiliation with 3M, is likely to dilute the reputation of the famous 3M Trademarks.

89.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

90.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by Plaintiff is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health. Such conduct invites public criticism of 3M and the manner in which 3M's respirators are being distributed during the COVID-19 pandemic and risks significant confusion about 3M's role in the marketplace for respirators that help to safeguard public health. Whereas 3M's corporate values and brand image center on the application of science to improve lives, Defendants' conduct imminently and irreparably harms Plaintiff's 3M brand.

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES – Page 20

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

91.     3M has been damaged by the acts of Defendants in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

### THIRD CLAIM FOR RELIEF

*(False Advertising Under Section 43(a)(1)(B) of the*

*Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*

92.     3M re-alleges and incorporates the allegations in paragraphs 1 through 93 above as through fully set forth herein.

93.     The statements that Defendants made in their solicitation and marketing materials constitute commercial advertising and/or commercial promotion.

94.     The statements that Defendants made in their solicitation and marketing materials contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendants and/or the products that Defendants allegedly had available for sale.

95.     The statements that Defendants made in their solicitation and marketing materials contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Plaintiff and Plaintiff's 3M-brand products, including, without limitation, Plaintiff's 3M-brand respirators.

96.     The false, misleading, and/or deceptive statements in Defendants' Solicitation were material to those receiving the offer.

97.     Defendants placed their solicitation and marketing materials into interstate commerce by, inter alia, sending them via email and posting them on the internet.

98.     Defendants' solicitation and marketing materials directly and/or proximately caused and/or are likely to cause Plaintiff to suffer harm in the form of irreparable diminution to the 3M brand and 3M Trademarks' reputation, fame, and goodwill.

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 21

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

99.   Upon information and belief, Defendants' acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

100.   3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by Plaintiff is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health. Such conduct invites public criticism of 3M and the manner in which 3M's respirators are being distributed during the COVID-19 pandemic and risks significant confusion about 3M's role in the marketplace for respirators that help to safeguard public health. Whereas 3M's corporate values and brand image center on the application of science to improve lives, Defendants' conduct imminently and irreparably harms Plaintiff's 3M brand.

101.   3M has been damaged by the acts of Defendants in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF

### (*Trademark infringement; RCW 19.77.150-.160*)

102.   3M re-alleges and incorporates the allegations in paragraph 1 through 101 above as though fully set forth herein.

103.   For the reasons stated in First, Second, and Third Claims for Relief under Federal law, 3M is also entitled to relief under Washington State law.

104.   Pursuant to RCW 19.77.160, the Court should enjoin Defendants from further infringing activities.

/ / /

/ / /

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 22

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

1

2

**FIFTH CLAIM FOR RELIEF**

*(Violation of Washington Unfair Business Practices Act, RCW § 19.86 et seq.)*

3       105.   3M alleges and incorporates the allegations in paragraphs 1 through 77 above as

4   though fully set forth herein.

5       106.   There is a public interest in providing first responders, health care workers, and

6   other vulnerable individuals with access to affordable PPE, including 3M N95 respirators.

7       107.   Defendants knowingly misrepresented their relationship to 3M and their access

8   to 3M products. They also knowingly misrepresented the amount of product they could

9   procure and the method for procuring the product to their potential customers.

10       108.   This action was deceptive and was intended to deceive Defendants' potential

11   customers. Additionally, Defendants continued actions are likely to continue to deceive other

12   potential customers who read or hear Defendants' misrepresentations.

13       109.   Defendants increased the price of 3M N95 respirators by attempting to resell the

14   product at a markup of between 1.6 and 3.9 times 3M's list price. Selling products for such an

15   increase during a pandemic when first responders, health care workers, governments, and

16   other vulnerable individuals need the product is immoral and unlawful under Washington law.

17       110.   Defendants' actions have harmed the public interest.

18       111.   Defendants' actions have harmed are likely to continue to harm first responders,

19   health care workers, and other vulnerable individuals as well as 3M's brand and reputation.

20       112.   3M has suffered, and will continue to suffer, irreparable harm from Defendants'

21   acts and conduct complained of herein, unless restrained by law. The damage suffered by

22   Plaintiff is exacerbated by the fact that Defendants are advertising and offering for sale 3M-

23   branded N95 respirators at exorbitantly inflated prices during a global pandemic when

24   Plaintiff's products are necessary to protect public health. Such conduct invites public

25   criticism of 3M and the manner in which 3M's respirators are being distributed during the

26   COVID-19 pandemic and risks significant confusion about 3M's role in the marketplace for

---

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 23

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

respirators that help to safeguard public health. Whereas 3M's corporate values and brand image center on the application of science to improve lives, Defendants' conduct imminently and irreparably harms Plaintiff's 3M brand.

113.   3M has been damaged by the acts of Defendants in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

### SIXTH CLAIM FOR RELIEF

*(Conspiracy)*

114.   3M alleges and incorporates the allegations in paragraphs 1 through 77 above as though fully set forth herein.

115.   Defendants, acting in concert with each other, and with intent to commit civil conspiracy, schemed to misappropriate 3M's Trademarks and good reputation in order to injure 3M's business and gain an unfair advantage in the marketplace. Defendants also schemed to wrongfully use 3M's Trademarks to mislead consumers into fraudulent transactions.

116.   Defendants committed an unlawful, overt act to further their conspiracy by posting 3M's Trademarks on their website, posing as 3M authorized distributors and creating a scheme to deceive consumers into sham transactions, through the use of 3M's name, 3M Trademarks and reputation. Defendants' conspired to engage in behavior that is a violation of 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(c), and Washington common law unfair competition and passing off.

117.   Defendants' conduct has caused, and will continue to cause, irreparable harm to 3M.

118.   3M is entitled to a permanent injunction enjoining Defendants from ongoing conspiracy to misuse the 3M Trademarks.

///

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

119.   3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by Plaintiff is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health. Such conduct invites public criticism of 3M and the manner in which 3M's respirators are being distributed during the COVID-19 pandemic and risks significant confusion about 3M's role in the marketplace for respirators that help to safeguard public health. Whereas 3M's corporate values and brand image center on the application of science to improve lives, Defendants' conduct imminently and irreparably harms Plaintiff's 3M brand.

120.   3M has been damaged by the acts of Defendants in an amount, currently unknown, to be proved at trial and then donated to charitable COVID-19 relief efforts, and 3M requests the relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendants' conduct complained of, herein, 3M asks that this Court:

A.     To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.     Pursuant to 15 U.S.C. § 1116:

1. Preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Trademarks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Plaintiff's 3M-brand respirators;

/ / /

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 25

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

2. Preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing themselves as being a distributor, authorized retailer, and/or licensee of Plaintiff and/or any of Plaintiff's products (including, without limitation, Plaintiff's 3M-brand respirators) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, Plaintiff and/or any of Plaintiff's products; and

3. Ordering Defendants to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants has complied with the injunction;

C.     Pursuant to 15 U.S.C. § 1117:

1. Order Defendants to provide Plaintiff with a full accounting of all manufacture, distribution, and sale of products under the 3M Trademarks (including, without limitation, Plaintiff's 3M-brand respirators), as well as all profits derived therefrom;

2. Order Defendants to pay to Plaintiff—so as to be donated charitably pursuant to subpart G, *infra*—all of Defendants' profits derived from the sale of goods offered under the 3M Trademarks (including, without limitation, Plaintiff's 3M-brand respirators);

3. Award Plaintiff treble actual damages—so as to be donated charitably pursuant to subpart G, *infra*—in connection with Defendants' trademark violations of the 3M Trademarks;

4. Find that Defendants' acts and conduct complained of herein render this case "exceptional"; and

5. Award Plaintiff—so as to be donated charitably pursuant to subpart G, *infra*—its costs and reasonable attorneys' fees incurred in this matter;

D.     Pursuant to 15 U.S.C. § 1118, order the destruction of all counterfeit goods and materials within the possession, custody, and control of Defendants that bear, feature, and/or contain any copy or colorable imitation of Plaintiff's 3M Trademarks;

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

E.      Award Plaintiff pre-judgment and post-judgment interest against Defendants;

F.      Award Plaintiff such other relief that the Court deems just and equitable;

G.      Requiring that all monetary payments awarded to Plaintiff be donated to a COVID-19 charitable organization(s)/cause(s) of Plaintiff's choosing; and

H.      Recovery of attorney's fees and costs pursuant to RCW 19.86.090.

### **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury pursuant to FED. R. CIV. P. 38(b) and 38(c).

Dated: July 15, 2020.                              GORDON REES SCULL MANSUKHANI, LLP


By: */s/ Nancy M. Erfle*
Nancy M. Erfle, WSBA No. 20644
nerfle@grsm.com

By: */s/ W. Gregory Lockwood*
W. Gregory Lockwood, WSBA No. 52232
wglockwood@grsm.com
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Direct: (503) 382-3855
Fax: (503) 616-3600

*Attorneys for Plaintiff 3M Company*

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES – Page 27

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile :  (503) 616-3600

## **VERIFICATION**

I, John Shinar, do hereby verify and state pursuant to 28 U.S.C. § 1746:

I am a member of the Strategic Accounts team in the 3M Healthcare, Medical Solutions Division. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position at 3M, my personal involvement in the event underlying this litigation, review of pertinent documents related to the case, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of 3M's records and conversations with 3M's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 15th day of July, 2020.

John Shinar



PRODUCTS FOR BUSINESS ▼    PRODUCTS FOR CONSUMERS ▷    ABOUT US ▷

United States > 3M Safety > Worker Health & Safety > Covid19 > 3M PPE Spot Fraudulent Offers, Counterfeit Products and P

**Worker Health & Safety**

OVERVIEW ▷   PRODUCTS ▼   SOLUTIONS ▼   TRAINING ▷   RESOURCES ▼   SUPPORT ▼



# Fighting Respirator Fraud, Counterfeiting, and Price Gouging

At 3M, we are committed to help combat fraudulent activity in connection with 3M products and the COVID-19 pandemic.

- ✉ Email
- f Facebook
- 🐦 Twitter
- in Linkedin
- ⌁

## 3M Enforcement Activities

To help combat COVID-19 related fraud, 3M has established new 3M hotlines in the U.S. and around the world to help end-users and purchasers of 3M products identify authentic 3M respirators and ensure products are from 3M authorized distributors. 3M has not, and will not, raise prices for its respiratory protection products as a result of the COVID-19 pandemic. 3M has published the current U.S. list prices for many of the most common models of 3M N95 respirators to help customers identify and avoid inflated prices. We have also filed lawsuits in courts across the country against wrongdoers, terminated 3M distributors for engaging in price gouging or violating 3M policy, and collaborated with law enforcement and technology companies to combat fraud.

EXHIBIT 1
Page 1 of 4

Case 2:20-cv-01096   Document 1   Filed 07/15/20   Page 30 of 59

See the actions 3M has taken to fight fraud, counterfeiting, and price gouging tied to the COVID-19 pandemic.

## Stay current on 3M's enforcement efforts.

[3M ACTIONS BY THE NUMBERS (PDF, 111 KB)](#)

[IN THE NEWS](#)

# Get the Facts

## Spot Fraudulent Offers, Counterfeit Products and Price Gouging

To help identify fraud, counterfeiting, and price gouging in connection with 3M's Respiratory Protection products, review these resources to get the facts on 3M's practices, products, and prices.







### Fraudulent Offers

To help identify fraudulent offers, review this list of common schemes that do not match 3M's practices.

[FRAUDULENT OFFERS (PDF, 80 KB)](#)

### Counterfeit Products

To help avoid counterfeit products, review this list of suggestions and 3M product indications.

[COUNTERFEIT PRODUCTS (PDF, 58.7 KB)](#)

### Price Gouging

To help identify and avoid inflated prices, consult 3M's list prices for common 3M N95 respirator models sold in the U.S.

[PRICE GOUGING (PDF, 80.7 KB)](#)

# Report a Concern

For help detecting fraud or avoiding counterfeit products, please contact your local fraud hotline.

EXHIBIT 1
Page 2 of 4

## United States and Canada

**The United States**
1 (800) 426-8688

**Canada** (English):
1 (800) 426-8688

**Canada** (French)
1 (800) 426-8688

## Europe

Submit a form if you are from the following countries:

**Great Britain**

**Germany**

**Netherlands**

**Belgium (Dutch)**

**France**

**Belgium (French)**

**Poland**

## Asia

Submit a form if you are from the following countries:

**Australia**

**Indonesia**

**India**

**Japan**

**South Korea**

**Malaysia**

**New Zealand**

**Philippines**

**Singapore**

**Thailand**

**Vietnam**

## Latin America

**Brazil**
0800 878-2808

**Mexico**
+525546319926

**Latin America**
(with the exception of Brazil and Mexico)

# Additional Resources

## Expectations of 3M Authorized Distributors

Read a communication to all 3M Authorized Safety and Industrial Distributors highlighting 3M's requirements for sales of 3M respiratory protection products.

**READ DISTRIBUTOR LETTER (PDF, 64.4 KB)**

## Personal Protective Equipment

Proper selection and use are key to utilizing respirators to help reduce exposure to airborne contaminants. Find Technical Bulletins, How to Videos, Fit Testing Resources and more information to help you protect your employees and yourself.

**Learn more about Covid-19 and Personal Protective Equipment**

## News Articles

**3M stops N95 scheme in Indiana, resolving fraud lawsuit**

Infographic data

EXHIBIT 1
Page 3 of 4

3M is fighting respiratory protection fraud, globally, every day. As of July 7, 2020, 3M has investigated more than 4,300 cases globally, filed 17 lawsuits, and has been granted 5 temporary restraining orders and 5 preliminary injunctions. Over 30 law firms in 3M's Preferred Counsel Network have offered to help bring cases forward. In addition, 10,000+ false or deceptive social media posts have been removed, 7,000+ fraudulent e-commerce offerings have been removed, and 140+ deceptive internet addresses have been removed.

EXHIBIT 1
Page 4 of 4



PRODUCTS FOR
BUSINESS ▼

PRODUCTS FOR
CONSUMERS ▷

ABOUT US ▷

3M United States > Coronavirus

Alert: 3M is committed to the fight against COVID-19. I



# Helping the world respond to COVID-19

## 3M is committed to doing everything we can to fight COVID-19 and support healthcare workers globally

The COVID-19 pandemic continues to affect all of us, and 3M is working around-the-clock to help provide critical tools for the fight. Our current focus: supporting healthcare and front-line workers around the world by manufacturing products they need to help protect their lives as they treat others.

EXHIBIT 2
Page 1 of 9



### Increasing output of N95 respirators

Doubled our global output rate to nearly 100 million respirators per month; expect to produce about 50 million respirators per month in the U.S. by June 2020.

Anticipate doubling our global capacity to almost 2 billion respirators in the next 12 months.

We have not increased the **prices we charge for 3M respirators** in this crisis.



### Partnering with others to supply more

Working with governments to investigate alternate manufacturing scenarios and exploring coalitions with other companies to increase capacity further.

Partnering with Ford Motor Company to increase production of 3M Powered Air Purifying Respirators.

Secured authorization from the Chinese government to import about 10 million masks to the US from our manufacturing facility in China.



### Getting product to those who need it most

In the last seven days of March 2020, we sent 10 million N95 respirators to healthcare facilities across the U.S.

In the US, 90% of our N95 respirators designated for healthcare workers; remainder for critical industries including: food, energy and pharmaceutical.

Maximizing production of other important products, including hand sanitizers and disinfectants.



### Combatting price-gouging, fraud and counterfeiting

Working with law enforcement, retail partners and others to identify unethical, illegal counterfeiters and price-gougers related to 3M's respirators, remove them from e-commerce partner sites, and refer them to the appropriate law enforcement authorities.

Inviting those with concerns of potentially fraudulent activity, price gouging, or counterfeit 3M products to **to report their concerns at 3M's website** so we can take action.

EXHIBIT 2
Page 2 of 9

# WARNING: Fraud and Counterfeit Activity

We have created a new 3M hotline for the U.S. and Canada that end-users and purchasers of 3M products can call for information on how to identify authentic 3M products and to ensure products are from 3M authorized distributors.



1 (800) 426-8688
Call the fraud hotline.



Report a concern



STATEMENT: Fraudulent Activity, Price Gouging, and Counterfeit Products
(PDF, 1.6 MB)

3M recommends purchasing our products from a 3M authorized distributor or dealer only. This offers the greatest assurance that you will receive authentic 3M product.

If you need help identifying 3M authorized distributors and dealers in your area, please contact 3M Help Center or 1 (888) 364-3577 in the United States. In Canada, please contact 3M Canada Customer Service at 1 (800) 364-3577.

EXHIBIT 2
Page 3 of 9

# Learn about critical 3M products and access helpful resources







### Personal Protective Equipment (PPE)

Proper selection and use are key to utilizing respirators to help reduce exposure to airborne contaminants. Find Technical Bulletins, How to Videos, Fit Testing Resources and more information to help you protect your employees and yourself.

**Learn more about personal protective equipment**

### Commercial Cleaning Solutions

Get information and application tips on 3M cleaning and disinfectant products for use by facility managers, building service contractors and all who clean public spaces.

**Learn more about commercial cleaning solutions**

### Supporting Health Care Providers

Every day, health care workers on the front lines put themselves at risk to ensure others are cared for. 3M Medical offers resources and information to help protect providers and patients, especially during this challenging time.

**Learn more about health care provider resources**

# Stay up to date with 3M's response to COVID-19

EXHIBIT 2
Page 4 of 9





April 01, 2020

**Putting healthcare workers first during the coronavirus outbreak**

EXHIBIT 2
Page 5 of 9





March 31, 2020

**3M introduces hotline, releases price lists to help combat counterfeits, price gouging during COVID-19**

EXHIBIT 2
Page 6 of 9

EXHIBIT 2
Page 7 of 9

READ MORE IN THE 3M NEWS CENTER

EXHIBIT 2
Page 8 of 9

# Stay up-to-date on the science of COVID-19

If you have questions about the virus and how to best protect yourself, please consult the sources below for the most current guidelines and recommended precautions.





## Center for Disease Control and Prevention

- **2020 Situation Summary**
- **What You Need to Know**
- **Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings**

## World Health Organization

- **Coronavirus**
- **Infection prevention and control during health care when novel coronavirus (nCoV) infection is suspected**

## Contact Media Relations

Media inquiries regarding 3M's response to the coronavirus situation should be referred to 3M Media Relations.

Contact Us

EXHIBIT 2
Page 9 of 9

**We use cookies on this site to enhance your user experience.**

**By clicking OK you are giving your consent for us to set cookies.**

More info



3M Science. Applied to Life.™

PRODUCTS FOR BUSINESS        ▷          PRODUCTS FOR CONSUMERS        ▷          ABOUT US ▷

United States   >   3M News Center   >   Press Releases   >   Company   >

3M and the Trump Administration Announce Plan to Import 166.5 Million Additional Respirators into the United States ov

# 3M News Center

PRESS RELEASES ▷     3M STORIES ▷     RESOURCES ▷     ABOUT 3M ▷     MEDIA CONTAC

## 3M and the Trump Administration Announce Plan to Import 16 United States over the Next Three Months

Imports to supplement the 35 million N95 respirators 3M currently produces in U.S. per month

Monday, April 6, 2020 5:58 pm CDT

**Dateline:** ST. PAUL, Minn.

**Public Company Information:**
NYSE:  MMM

EXHIBIT 3
Page 1 of 5

ST. PAUL, Minn.--(BUSINESS WIRE)--Today 3M and the Trump Administration are announcing a plan to
over the next three months to support healthcare workers in the United States. 3M and the Administration
that this plan does not create further humanitarian implications for countries currently fighting the COVI
to further collaborate to fight price gouging and counterfeiting.

"I want to thank President Trump and the Administration for their leadership and collaboration," said 3M
Roman. "We share the same goals of providing much-needed respirators to Americans across our count
seek to take advantage of the current crisis. These imports will supplement the 35 million N95 respirato
month in the United States."

"Given the reality that demand for respirators outpaces supply, we are working around the clock to furth
the most critical areas," Roman continued. "We'll continue to do all we can to protect our heroic healthc
your tireless efforts – including those in our plants and distribution centers around the world."

3M will import 166.5 million respirators over the next three months primarily from its manufacturing faci
address and remove export and regulatory restrictions to enable this plan. The plan will also enable 3M
where 3M is the primary source of supply.

As a global company, 3M has manufacturing operations around the world to serve local and regional ma
continue to work with governments to direct respirators and other supplies to serve areas most in need.

Beginning in January, 3M ramped up production of N95 respirators and doubled its global output to 1.1 l
already put into motion additional investments and actions that will enable it to double its capacity again
online in the next 60 to 90 days. In the United States, for example, 3M expects to be producing N95 res
current levels.

Last week 3M announced additional actions to address price gouging and counterfeit activity related to
take decisive action against those seeking to take illegal and unethical advantage of the COVID-19 outb

**Forward-Looking Statements**
This news release contains forward-looking information about 3M's financial results and estimates and l
identify these statements by the use of words such as "anticipate," "estimate," "expect," "aim," "project,"
other words and terms of similar meaning in connection with any discussion of future operating or finan
cause actual results to differ materially are the following: (1) worldwide economic, political, regulatory, c
Company's control, including natural and other disasters or climate change affecting the operations of th
crises such as the global pandemic associated with the coronavirus (COVID-19); (3) liabilities related to
products and chemistries, and claims and governmental regulatory proceedings and inquiries related to
developments that could occur in the legal and regulatory proceedings described in the Company's Ann
quarterly reports on Form 10-Q (the "Reports"); (5) competitive conditions and customer preferences; (6
and market acceptance of new product offerings; (8) the availability and cost of purchased components
derivatives) due to shortages, increased demand or supply interruptions (including those caused by natu
with the phased implementation of a global enterprise resource planning (ERP) system, or security brea
infrastructure; (10) the impact of acquisitions, strategic alliances, divestitures, and other unusual events
strategies, and possible organizational restructuring; (11) operational execution, including scenarios whe
(12) financial market risks that may affect the Company's funding obligations under defined benefit pens
of capital. Changes in such assumptions or factors could produce significantly different results. A furthe
Concerning Factors That May Affect Future Results" and "Risk Factors" in Part I, Items 1 and 1A (Annual
by applicable Current Reports on Form 8-K. The information contained in this news release is as of the c
looking statements contained in this news release as a result of new information or future events or deve

EXHIBIT 3
Page 2 of 5

About 3M
At 3M, we apply science in collaborative ways to improve lives daily. With $32 billion in sales, our 96,00
3M's creative solutions to the world's problems at www.3M.com or on Twitter @3M or @3MNews.

**Contact:**
Jennifer Ehrlich
651-733-8805

**Related Materials**
Download press release as a PDF

**Multimedia Files:**
Download All Files



Download:

Download Thumbnail (33.12 KB)

Download Preview (34.23 KB)

Download Small (35.65 KB)

Download Square (34.4 KB)

## 3M United States

| **PRESS RELEASES** | **3M NEWS CENTER** | **RELATED LINKS** | **HELP** |
|---|---|---|---|
| Company | Media Contacts | Investor Relations | Help Center |
| Earnings and Dividends | 3M Stories | History | Site Map |
| | | | **NEWS** |

EXHIBIT 3
Page 3 of 5

Mergers and Acquisitions

Product and Brand

Sustainability

View All Releases

Resources

About 3M

About 3M

Factsheet

Research & Development

Press Releases

**REGULATORY**

SDS Search

Transport Information Search

RoHS & REACH Information Search

CPSIA Certification Search

California Supply Chains Act Disclosure (PDF, 84KB)

UK Modern Slavery Act Statement (PDF, 169KB)

More Regulatory & Compliance Information

**ABOUT US**

About 3M

3M Careers

Investor Relations

Partners & Suppliers

Government Customers

Sustainability

3Mgives

EXHIBIT 3
Page 4 of 5

## FOLLOW US

    

**Change Location**

United States - English



Legal   |   Privacy

© 3M 2020 . All Rights Reserved.

The brands listed above are trademarks of 3M.

Business Wire NewsHQ<sup>sm</sup>

EXHIBIT 3
Page 5 of 5

Int. Cls.: 9 and 10

Prior U.S. Cls.: 21, 23, 26, 36, 38, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 3,398,329

Registered Mar. 18, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# 3M

3M COMPANY (DELAWARE CORPORATION)
3M CENTER, 220-9E-01
2501 HUDSON ROAD
ST. PAUL, MN 55144

FOR: FULL LINE OF PARTICULATE, OZONE, GAS, VAPOR, CHEMICAL, BIOHAZARD AND OTHER RESPIRATORS, INCLUDING FILTERING FACE-PIECE RESPIRATORS AND ELASTOMERIC FACE-PIECE RESPIRATORS, OTHER THAN FOR ARTIFICIAL RESPIRATION; FULL LINE OF SELF-RESCUE AND PROTECTION APPARATUS, NAMELY, OXYGEN BREATHING UNITS, SUPPLIED-AIR RESPIRATORS, AND POWERED AIR-PURIFYING SYSTEMS (PAPRS) RESPIRATORS; CARTRIDGES, FILTERS, AIR TANKS AND OTHER COMPONENT PARTS FOR RESPIRATORS AND BREATHING UNITS; DUST MASKS; FULL LINE OF PROTECTIVE EYEWEAR, NAMELY, SAFETY GOGGLES, EYEGLASSES AND EYE SHIELDS; FACE-PROTECTION SHIELDS; EAR PLUGS AND EAR MUFFS TO ATTENUATE SOUND AND PROTECT HEARING; HARD HATS AND OTHER PROTECTIVE HELMETS; WELDING HELMETS; AIR MONITORING DEVICES AND SENSORS FOR MEASURING GASES AND VAPOR CONCENTRATION LEVELS; GAS DETECTORS FOR DETECTING THE PRESENCE OF CARBON MONOXIDE AND OTHER GASES; THERMAL-IMAGING CAMERAS FOR USE BY FIREFIGHTERS AND FOR SEARCH AND RESCUE; ENVIRONMENTAL SAMPLING AND TESTING INSTRUMENTS AND EQUIPMENT, NAMELY, ELECTRONIC LUMINOMETERS, AND RELATED SOFTWARE, DOCKING STATIONS AND BATTERIES, FOR DETECTING, MEASURING AND ANALYZING CHEMICALS, BIOLOGICAL SUBSTANCES, FOOD RESIDUES AND MICROBES; MICROBIOLOGICAL AND CONTAMINANT-TESTING INSTRUMENTS AND EQUIPMENT, AND SOFTWARE RELATED THERETO, FOR DETECTING, MEASURING AND ANALYZING BACTERIA, INCLUDING PATHOGENS SUCH SALMONELLA AND LISTERIA, ALLERGENS, TOXINS, VITAMINS, ANTIBIOTICS, AND OTHER ORGANISMS AND SUBSTANCES; DIAGNOSTIC APPARATUS FOR TESTING FOOD; LABORATORY EQUIPMENT AND SUPPLIES, NAMELY, TEST TUBES, TEST TUBE CAPS, DIP STICKS, RACKS, MICROTITRE PLATES AND TRAYS; SECURITY SCANNERS AND READERS FOR USE IN READING PASSPORTS AND OTHER FORMS OF IDENTIFICATION; ANTI-THEFT AND LIBRARY MATERIAL CHECK-OUT SECURITY SYSTEMS; RADIO FREQUENCY IDENTIFICATION (RFID) TAGS AND READERS; COMPUTER SOFTWARE FOR SUPPLY CHAIN MANAGEMENT FROM SOURCE TO CONSUMPTION, NAMELY, FOR COLLECTING, STORING AND MANAGING DATA, AND REPORTING, EXECUTING AND TRACKING, IN CONNECTION WITH ENTERPRISE RESOURCE PLANNING, SUPPLIER ENABLEMENT, MANUFACTURING, INVENTORY CONTROL AND WAREHOUSING, ORDER FULFILLMENT, SHIPPING, TRANSPORTATION AND DELIVERY; COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT AND MEDICAL RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND MEDICAL IMAGING SCANNERS AND RELATED SOFTWARE FOR CAPTURING IMAGES OF THE MOUTH AND TEETH FOR USE IN DENTISTRY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

FOR: FULL LINE OF SURGICAL AND MEDICAL MASKS, RESPIRATORS AND FACE AND EYE SHIELDS FOR MEDICAL AND HEALTH-CARE RELATED PERSONNEL; FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS

EXHIBIT 4

Page 1 of 2

AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTRO-ENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS; AUTOCLAVES FOR MEDICAL USE; ORTHODONTIC APPLIANCES; DENTAL APPARATUS, NAMELY, INTRA-ORAL LIGHT SYSTEMS FOR CURING DENTAL MATERIALS, CERAMIC USED IN MAKING DENTAL CROWNS, BRIDGES AND OTHER RESTORATIVES; DENTAL INSTRUMENTS AND KITS COMPRISED OF SUCH INSTRUMENTS, NAMELY, MANDRELS, BURS, DISCS, CUPS, WHEELS, POINTS, BRUSHES AND ABRASIVE STRIPS USED TO GRIND, POLISH OR FINISH DENTAL RESTORATIVES; DENTAL INSTRUMENTS, NAMELY, SCISSORS, CRIMPING PLIERS, CONTOURING PLIERS AND IMPRESSION TRAYS; ELECTRONIC MIXERS FOR DENTAL COMPOUNDS; APPLICATORS AND DISPENSERS FOR DENTAL PRIMERS, CEMENTS, ADHESIVES, IMPRESSION MATERIALS AND RESTORATIVE MATERIALS; GLASS-FIBER POSTS USED IN DENTAL RESTORATIVE PROCEDURES; AND DENTAL PROPHYLAXIS ANGLES AND DENTAL PROPHYLAXIS CUPS FOR USE IN CLEANING TEETH AND DENTAL HYGIENE PROCEDURES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,237,168, 2,793,534 AND OTHERS.

SER. NO. 77-257,496, FILED 8-16-2007.

TARAH HARDY, EXAMINING ATTORNEY

EXHIBIT 4
Page 2 of 2

Int. Cls.: 1, 3, 5, 9, 10 and 28

Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52

**Reg. No. 2,692,036**

## United States Patent and Trademark Office

Registered Mar. 4, 2003

## TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANU-FACTURING COMPANY (DELAWARE COR-PORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICA-TOR STRIPS AND TAPE FOR USE WITH AUTO-CLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; IN-DICATOR STRIPS FOR TESTING GLUTARALDE-HYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDI-TIONS FOR USE IN SAFETY-MONITORING; INDI-CATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZA-TION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CON-TAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZA-TION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRO-DUCTS, NAMELY, CLEANSERS, CREAMS, LO-TIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRES-SINGS, MEDICATED COMPRESSES, TRANSPAR-ENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGI-CAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMI-CROBIAL SOLUTIONS; GAUZE; WOUND HEAL-ING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SUR-GICAL DISINFECTANTS AND PREPPING SOLU-TIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

EXHIBIT 5
Page 1 of 2

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINES OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,213,836, AND 1,234,260.

SER. NO. 76-137,885, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

EXHIBIT 5

Page 2 of 2

**Int. Cls.: 1, 3, 5, 9, 10 and 28**

**Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52**

Reg. No. 2,793,534

## United States Patent and Trademark Office

Registered Dec. 16, 2003

# TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANU-FACTURING COMPANY (DELAWARE COR-PORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICA-TOR STRIPS AND TAPE FOR USE WITH AUTO-CLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; IN-DICATOR STRIPS FOR TESTING GLUTARALDE-HYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDI-TIONS FOR USE IN SAFETY-MONITORING; INDI-CATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZA-TION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CON-TAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZA-TION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND

SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRO-DUCTS, NAMELY, CLEANSERS, CREAMS, LO-TIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRES-SINGS, MEDICATED COMPRESSES, TRANSPAR-ENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGI-CAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMI-CROBIAL SOLUTIONS; GAUZE; WOUND HEAL-ING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SUR-GICAL DISINFECTANTS AND PREPPING SOLU-TIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

EXHIBIT 6

Page 1 of 2

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,234,260 AND OTHERS.

THE MATTER SHOWN IN BROKEN LINES INDICATES THE RELATIVE PLACEMENT OF THE MARK ON A TYPICAL PACKAGE FOR THE GOODS AND IS NOT CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 76-138,263, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

EXHIBIT 6

Page 2 of 2

**3M** Science.
Applied to Life.™

**March 31, 2020**

# Fraudulent Activity, Price Gouging, and Counterfeit Products

At 3M, we are committed to doing all we can to help combat the fraudulent, price gouging, and counterfeit activity that is unfortunately occurring in connection with COVID-19. Examples include people fraudulently representing themselves as being affiliated with 3M and having authentic 3M product to sell, selling (or offering to sell) 3M products at grossly inflated prices, selling counterfeit products falsely claimed to be from 3M, and falsely claiming to manufacture 3M products. In many cases, these scammers will try and secure funds in advance and then disappear once the money is received.

3M will not tolerate any such activity by 3M authorized channel partners and we will aggressively pursue third-parties that seek to take advantage of this crisis. We are working with law enforcement authorities around the world – including, in the U.S., the U.S. Attorney General, state Attorneys General, and local authorities.

We have also created a new **3M COVID-19 Fraud hotline** for the U.S. and Canada that end-users and purchasers of 3M products can call for information to help detect fraud and avoid counterfeit products. **You can reach this hotline by calling: 1 (800) 426-8688.**

In addition to the hotline, you can report a concern at **www.go.3m.com/covidfraud**.

3M recommends purchasing our products only from a 3M authorized distributor or dealer, as that offers the greatest assurance that you will receive authentic 3M products.

If you need help identifying 3M authorized distributors and dealers in your area, please contact **3M Help Center** at **www.3m.com/3M/en_US/company-us/help-center** or **1 (888) 364-3577** in the United States. In Canada, please contact **3M Canada Customer Service** at **1 (800) 364-3577**.

**With regard to 3M respirators specifically, we are providing the following additional information to help stop price gouging and sales of counterfeit products:**

- 3M has <u>not</u> changed the prices we charge for 3M respirators as a result of the COVID-19 outbreak.

- We are actively working to eliminate price gouging, including making referrals to law enforcement where appropriate.

- To help customers identify and avoid inflated prices, we are now publishing current single-case list prices for many of the most common 3M N95 respirator models sold in the U.S.

- List prices for these models sold in Canada are similar on a currency-adjusted basis.

| | Model # | List Price (USD) |
|---|---|---|
| **Surgical N95 Respirators** | 1804 | $0.68 |
| | 1804S | $0.68 |
| | 1860 | $1.27 |
| | 1860S | $1.27 |
| | 1870+ | $1.78 |
| **Standard N95 Respirators** | 8210 | $1.02 - $1.31 |
| | 8210Plus | $1.18 - $1.50 |
| | 8210V | $1.48 - $1.88 |
| | 8110S | $1.08 - $1.37 |
| | 8200 | $0.63 - $0.80 |
| | 8511 | $2.45 - $3.11 |
| | 9105 | $0.64 - $0.81 |
| | 9105S | $0.64 - $0.81 |
| | 9210+ | $1.40 - $1.78 |
| | 9211+ | $2.68 - $3.40 |

EXHIBIT 7

- These list prices are per respirator.

- Actual prices may be lower than these list prices, as negotiated between you and your chosen reseller.

- 3M has also worked to further accelerate delivery of respirators to critical end-users – both by utilizing our existing network of healthcare distributors and, where it makes sense to do so, shipping directly to end-user locations. Effective the week of March 23, the small volume of 3M filtering facepiece respirators being made available to critical industrial infrastructure is shipping directly to the specified end-user.

- 3M respirators should be sold only in 3M packaging, with model-specific user instructions accompanying the product.

- 3M respirators should not be sold individually or without packaging (including User Instructions).

- 3M has strict quality standards, and therefore products that have missing straps, strange odors, blocked valves, misspelled words, etc. are likely not authentic 3M respirators.

Finally, 3M personal protective equipment (PPE) is intended, labeled, packaged, and certified to meet the requirements of the countries in which 3M sells it. Those requirements differ around the world, including as it relates to, for example, respirator performance, local language, and local certification and approval for sale and use. As a result, 3M PPE imported from other countries may not meet local requirements. Please confirm such PPE meets all applicable requirements prior to use.

For technical assistance regarding the selection and use of 3M respirators, please contact your local 3M Technical Service team. In the U.S., you can call 1 (800) 243-4630. In Canada, you can call 1 (800) 364-3577.

**For more information, contact the 3M Help Center at 1 (888) 364-3577 in the United States. In Canada, please contact 3M Canada Customer Service at 1 (800) 364-3577.**

3M Company
3M Center
St. Paul, MN
55144-1000

© 3M 2020. All Rights Reserved.
3M is a trademark of 3M Company and affiliates.
Used under license in Canada.

EXHIBIT 7
Page 2 of 2





## 3M COVID-19 Anti-Fraud, Anti-Price Gouging, and Anti-Cou

### Have a concern to report related to Fraud, Price Gouging or Count

At 3M, we are committed to doing all we can to help combat the fraudulent, price gouging, and c
will not tolerate any such activity by 3M authorized channel partners and we will aggressively pu
enforcement authorities around the world – including, in the U.S., the U.S. Attorney General, Stat

EXHIBIT 8
Page 1 of 5

# COVID-19 Fraud

*Please complete as much of the information requested below as possible. Fields marked with an as
that 3M has received the report. We request that you reply to that email and attach any copies of i
can help us to investigate the situation.*

## Requestor Information

**First Name***

**Last Name***

**Company Name**

**Email/Business Email Address***

**Phone/Business Phone Number***

**Government Agency Name (if applicable)**

**Country/Region***

**United States**

**Account Type***

**Select One**

EXHIBIT 8
Page 2 of 5

## Alleged Solicitor/Seller Information

*Please provide as much information as possible.*

**Seller First Name**

**Seller Last Name**

**Seller Company**

**Seller Email**

**Seller Phone**

**Seller's Website**

## Fraud Product Details

**Product 1\***

**Select One**

**Product 1 Price**

**Product 1 3M SKU**

**Product 1 Quantity**

EXHIBIT 8
Page 3 of 5

## Product 2

> **Select One**

## Product 2 Price

## Product 2 3M SKU

## Product 2 Quantity

## Product 3

> **Select One**

## Product 3 Price

## Product 3 3M SKU

## Product 3 Quantity

## How did the interaction take place?*

> **Select One**

## Interaction URL

## Product Fraud Details*

*Provide as much detail about the interaction as possible including how you first contacted the selle*

EXHIBIT 8
Page 4 of 5

3M respects your right to privacy. 3M will collect, use, and disclose the personal information you
fraud, price gouging and fraudulent activity, 3M may voluntarily share information with law enforc
law enforcement agencies, 3M will have no control over that personal information.

Please be aware that the information you supply about yourself, or any aspect of 3M's operations
information that, to the best of your knowledge, is correct. You will not be sanctioned for submitti
knowingly provide false or misleading information, it may result in disciplinary or judicial action.

Submit

EXHIBIT 8
Page 5 of 5