1

HONORABLE RICHARD A. JONES

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

3M COMPANY,

Case No. 2:20-cv-01096-RAJ

9

Plaintiff,

**MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS**

10

vs.

11

AIME LLC, MARK BACIAK, AND
MICHAEL BINGHAM,

**NOTE ON MOTION CALENDAR:
December 18, 2020**

12

Defendants.

**ORAL ARGUMENT REQUESTED**

13

14

**CONFERENCE CERTIFICATION**

15

Counsel for 3M certifies that it discussed all claims at issue at length with counsel for

16

Defendants by telephone on November 20, 2020, but was unable to reach an agreement that the

17

counterclaims are deficient and should be withdrawn or repleaded.

18

**INTRODUCTION**

19

3M sued Defendants as part of a nationwide effort to combat the rampant fraud and

20

profiteering that has accompanied the pandemic-driven spike in demand for medical respirators.

21

The Providence hospital system—an existing 3M end-user—and its authorized 3M distributor

22

reported that Defendants claimed access to *500 million* 3M N95 filtering facepiece respirators, or

23

roughly 3M's entire pre-pandemic annual production. The report included documentary evidence

24

that Defendants were using forged 3M documents, misrepresenting 3M's sales process, falsely

25

claiming that 3M would be directly involved in the transaction, and demanding upfront payment

26

of more than four times 3M's list price per respirator. When 3M approached Defendants, they

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 1

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

insisted that *3M* was the fraudulent actor, and refused to provide any explanation for how they were offering so many respirators, or why they were falsely claiming an affiliation with 3M After confirming Defendants were defrauding consumers, 3M filed this action to protect the public and 3M's good name and trademarks from the Defendants' scheme.

Rather than abandon their scheme, the Defendants doubled-down, offering a fabricated narrative that 3M is somehow hiding 90% of its global production and selling it through irregular channels to enrich corporate officers (without anyone but AIME noticing), in which AIME has gone from non-existent to rivaling 3M's production capacity in mere months, and in which 3M's request for an injunction restricting misuse of 3M's name and marks is an anticompetitive ploy designed to shut down AIME. These allegations are fabrications designed to deflect from the Defendants' transparent malfeasance, best evidenced by the fact that Baciak and Bingham dissolved the AIME entity on the same day 3M filed this action.

Defendants assert seven counterclaims against 3M. None is legally sound or supported by plausible factual allegations, and thus each fails to state a claim upon which relief can be granted. 3M therefore moves to dismiss the counterclaims under Rule 12(b)(6).

## ARGUMENT AND AUTHORITY

Under, Fed. R. Civ. P. 12(b)(6), a claim is subject to dismissal when ilacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The Court should assess the counterclaims "in the light most favorable to the plaintiff" to "determine whether it alleges enough facts 'to state a claim to relief that is plausible on its face.'" *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

**I.      Malicious Prosecution**

Defendants' first counterclaim is malicious prosecution. *See*  Countercl. ¶¶ 103-07. "Actions for malicious prosecution are not favored in the law." *Brin v. Stutzman*, 89 Wn. App. 809, 818, 951 P.2d 291, 297 (1998). To state this counterclaim, Defendants must plead that (1) 3M instituted this action, (2) 3M did not have probable cause, (3) 3M initiated the action with malice; and (4) an injury resulting from the action. *Id.*; RCW 4.24.350. They must allege facts sufficient to show that 3M's action is wholly meritless, not just partially untrue. *Brin* at 819-820. Defendants here have failed to state a claim for malicious prosecution, because they have not stated sufficient facts to support an inference as to the second, third, or fourth elements.

**A.      *Defendants' allegations do not support an inference of malice.***

Defendants contend two facts support an inference of malice: (1) that 3M did not send a cease-and-desist letter before filing this action, and (2) that 3M used a "cookie-cutter" complaint. *See* Contercls. ¶¶ 106-07. No reasonable person could infer malice from these allegations.

The malice element of this tort requires that the claim "'was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff.'" *Bender v. City of Seattle*, 99 Wn.2d 582, 594, 664 P.2d 492, 501 (1983) (quoting *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 502, 125 P.2d 681, 689 (1942)) (emphasis omitted). Declining to send a formal cease-and-desist letter establishes neither "wrongful motives" nor "reckless disregard" for Defendants rights; there is no obligation to send such letters, and Defendants concede that 3M reached out to them by telephone.  Countercl. ¶ 61. Nor could Defendants' opinion that the complaint was not sufficiently "tailored" to their wrongdoing imply malice; Defendants offer nothing in support of that assertion but their *ipse dixit*, and ignore the manifold specific allegations about their misconduct. *See, e.g.*, Compl. ¶¶ 1-8, 20-23, 53-73.

/ / /

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 3

**Gordon Rees Scully Mansukhani, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

**B.      *Defendants' probable cause argument ignores the nature of 3M's claim.***

Defendants contend that 3M's trademark claims lacks probable cause, arguing that the first-sale doctrine allowed Defendants to identify the respirators they were selling with 3M's marks. *See* Countercl. ¶ 105. That argument fails because that is not what 3M alleges. Instead, 3M claims that Defendants implied a false affiliation with 3M by, *inter alia*, forging documents purporting to be from 3M and representing that orders from AIME could be tracked on 3M's website. *See* Compl. ¶¶ 5, 63-70. Federal courts have repeatedly endorsed the validity of 3M's theory. *See 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 196 (S.D.N.Y. 2020); *see also, e.g.*, *3M Co. v. Rx2Live, LLC*, 120CV0523NONESAB, 2020 WL 3579828 (E.D. Cal. Apr. 30, 2020). Because 3M's theory is valid, the first sale[1] doctrine does not defeat probable cause.

Moreover, a "reasonable belief" in the merits of the action is a complete defense. *See Brin*, 89 Wn. App. at 822-23. Several federal courts have recognized the merits of 3M claims on similar facts, precluding any inference that 3M could not have reasonably expected success.

**C.      *Defendants' own allegations support probable cause.***

Defendants admit that Baciak formed AIME shortly after the WHO declared COVID-19 a pandemic and the first United States case was discovered in Washington state. *See* Compl. ¶ 53; Ans. ¶ 50. Defendants admit they are not authorized distributors of 3M products. *See* Compl. ¶ 57; Ans. ¶ 57. Defendants admit that 3M's annual production of N95 respirators was 1.1 billion when this lawsuit began. *See* Compl. ¶¶ 43-44; Ans. ¶¶ 43-44.

Defendants nevertheless allege that an attorney claiming to represent a company called "First Key" approached AIME, claiming to have "access to 500 million 3M 1860 respirators." Countercl. ¶ 60. Defendants allege that the unnamed attorney claimed that "First Key" was

---

[1] In any event, the first sale doctrine does not apply because Defendants did not (and could not) have purchased original or genuine 3M model 1860 N95 respirators based on the sheer alleged volume that Defendants claimed they could access.  *See* Compl. ¶¶ 43-44; Ans. ¶¶ 43-44; Countercls. ¶ 60. Defendants admit they are not authorized 3M product distributors.  Compl. ¶ 57; Ans. ¶ 57; *see Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1135-39 (9th Cir. 2010) (holding that "first sale" doctrine does not provide a defense where non-genuine/counterfeit accused products) (surveying cases).

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 4

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

negotiating a contract with 3M. *See id.* Defendants do not claim that they sought to verify that First Key was an authorized distributor, or that they even believed it was. *See id.* Defendants allege that they told Providence they had access to 500 million 3M respirators, while obfuscating the details of the transaction *See id.* at ¶ 61. Defendants allege that Providence either had 3M listening in on the call or relayed the details of the call to 3M. *See id.* Defendants allege that 3M contacted AIME, that AIME represented their supplier was "First Key," and that 3M could not find "First Key" in 3M's systems. *See id.*

These, then, are the undisputed facts: Baciack formed AIME in February 2020, at the dawn of the COVID 19 pandemic in the United States. A few short weeks later, in March 2020, AIME represented to Providence that it had access to 500 million 3M N95 respirators—nearly half of 3M's then-current annual production for all models of N95 respirators (and approximately equal to 3M's pre-pandemic global production). Providence brought this to 3M's attention. When 3M asked AIME where it was getting these respirators, AIME provided the name of a company not on 3M's list of approved suppliers.

Having heard this wild and extremely implausible tale from AIME, 3M acted reasonably by taking action to protect the public against fraud and to protect 3M's name and reputation. A newly-created company was claiming to have a year's worth of 3M's N95 production, and was lying to 3M's end-users about the origin of the goods and 3M's involvement with AIME.

### D.     *Defendants' allegations do not support an inference of damages.*

Defendants make no factual allegations of damages stemming from this action. *See* Countercl. ¶¶ 103-108. To the extent Defendants mean to rely upon the allegation that they have incurred attorneys' fees, attorneys' fees are not "damages" for a malicious prosecution claim under Washington law. *Fenner v. Lindsay*, 28 Wn. App. 626, 630, 625 P.2d 180, 182 (1981).[2]

---

[2] Nor could Defendants rely on punitive damages to satisfy this element. The tort of malicious prosecution does not allow for punitive damages under Washington law. *See Peterson v. Littlejohn*, 56 Wn. App. 1, 13, 781 P2d 1329, 1336 (1989) (while § 1983 claim could support punitive damages, tort of malicious prosecution could not).

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 5

## II.     Abuse of Process

Defendants' second counterclaim is abuse of process. *See* Countercl. ¶¶ 109-110. Under Washington law, the elements of abuse of process are "'(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.'" *See Batten v. Abrams*, 28 Wn. App. 737, 745, 626 P.2d 984, 988 (1981) (quoting *Fite v. Lee*, 11 Wn. App. 21, 27, 521 P.2d 964 (1974)). "'The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" *See id.* (quoting *Fite* at 27). "Thus, there must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Id.* at 748.

Here, Defendants do not allege that 3M has used any process empowered by the suit for an improper end. Instead, they complain about the fact of the action itself. That is not actionable as abuse of process under Washington law. The claim therefore fails as a matter of law.

## III.    Antitrust

Defendants' bring their third claim under Sections 1 and 2 of the Sherman Act, alleging that 3M is using this suit to stifle competition.. *See* Countercl. ¶¶ 111-20. The claim has no factual or legal basis. All 3M seeks to do is ensure that Defendants not use 3M's name to misrepresent that they have a relationship with 3M or that 3M is involved in their sales.

The antitrust claim fails for several reasons. First, 3M has immunity for this lawsuit under the Petition Clause of the First Amendment. Second, Defendants have not identified the relevant market. Third, Defendants have not pleaded concerted action or market impact. Fourth, Defendants have not pleaded monopolization or attempted monopolization.

### A.     *The First Amendment bars antitrust claims based on litigation activity.*

"Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S. Ct. 1920, 1926 (1993). This "*Noerr* immunity" extends to litigation, even if the plaintiff's sole

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

purpose is to "destroy their competitors." *Id.* at 57 (alteration omitted) (quoting *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138, 81 S. Ct. 523, 530 (1961)).[3]

### 1. <u>*The only exception to this rule is when a lawsuit is a "sham."*</u>

A narrow exception to this doctrine exists, but does not apply here. The Supreme Court has held that *Noerr* immunity does not apply to a "sham" lawsuit that "bars competitors from meaningful access to adjudicatory tribunals and so usurps the decisionmaking process." *Prof'l Real Estate*, 508 U.S. at 58 (internal alterations omitted) (quoting *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512, 92 S. Ct. 609, 612 (1972)).

### 2. <u>*A party alleging a sham must clear a high bar.*</u>

To prevent chilling First Amendment activities, the normal Rule 12(b)(6) standard does not apply when evaluating *Noerr* immunity. A plaintiff asserting an antitrust claim based on litigation activities "has the burden to state factual allegations that show the defendant's conduct falls outside the protection of *Noerr-Pennington*." *Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1144 (S.D. Cal. 2020). "In order not to chill legitimate lobbying activities, it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply." *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988). "Courts may properly be more critical in reviewing complaints which invoke the sham exception to the Noerr-Pennington doctrine since the conduct is presumptively protected by the first amendment, involving here the right of access to the court." *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983).

### B.    *3M's lawsuit is clearly not a sham.*

The test used to assess whether litigation is a sham varies depending on whether or not the claimant alleges a series of sham proceedings. *POSCO*, 31 F.3d at 810-11. One standard applies to an isolated action, and another to a series of actions. *See id.* Defendants do not state

---

[3] Even on the face of the counterclaims, this is clearly not 3M's motive. 3M seeks an injunction only against the use improper of its marks by an unauthorized reseller. Resellers of respirators 3M has already sold into the downstream market are not "competing" with 3M in the upstream manufacturing level.

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

which standard they assert applies. Under either standard, however, this action clearly is not a "sham." *Noerr* immunity thus precludes Defendants' antitrust claim.

 1. *3M's claim is not a sham under the isolated-claim standard.*

An isolated lawsuit undergoes a two-step analysis. "First, the suit must be 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'; second, the baseless lawsuit must conceal '"an attempt to interfere directly with the business relationships of a competitor."'" *POSCO*, 31 F.3d at 810 (quoting *Prof'l Real Estate*, 508 U.S. at 60-61). "The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *Id.* at 810.

 a. 3M's claim is not objectively baseless.

"If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Prof'l Real Estate*, 508 U.S. at 60. "The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Id.* at 62. "Probable cause to institute civil proceedings requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" *Id.* at 62-63 (internal alterations omitted). "Where . . . there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." *Id.* at 64.

Defendant, therefore, bears the burden of pleading sufficient facts to overcome the *Noerr* presumption. "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). Nor are conclusory allegations sufficient to state a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, Defendants' pleading does not establish an absence of probable cause under the heightened standard applied when evaluating challenges to *Noerr* immunity (nor, for that matter, any other standard). Even accepting the facts as pleaded (while ignoring—as courts must—

conclusory allegations and conclusions of law), there can be no doubt that 3M objectively had probable cause to initiate this suit. *See* Part I.C, *supra*.

On the undisputed facts, 3M had objective probable cause to bring an action against the Defendants. Defendants told a 3M customer that they controlled nearly half of 3M's pandemic-level production of N95 respirators, but could not explain the origin of the goods they were trying to sell. When 3M contacted Defendants, they claimed that 3M was unaware of its own respirator production and selling practices. When it filed this action, 3M had already obtained a preliminary injunction on a similar claim. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 196 (S.D.N.Y. 2020). 3M's claim was objectively reasonable, and *Noerr* immunity applies.

> **b.**    3M's claim does not interfere with a competitor's business.

In the single-claim analysis, the second question is whether the action conceals '"an attempt to interfere directly with the business relationships of a competitor."'" *POSCO*, 31 F.3d at 81. As a threshold matter, the plaintiff and the defendant *must actually be competitors. See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 715–16 (D. Md. 2017), *aff'd*, 937 F.3d 1359 (Fed. Cir. 2019) (patent assertion entity could not sham exception to *Noerr* immunity for bank's lawsuit, as the bank and the patent assertion entity were not competitors); *Evans Hotels*, 433 F. Supp. 3d at 1151 (test not satisfied because "hotel operators and developers and labor unions are not competitors.").

Here, Defendants allege no facts supporting an inference that AIME is a competitor to 3M. Defendants make a conclusory allegation to that effect, *see* Countercl. ¶ 115, but that is not sufficient. *Oregon Nat.*, 944 F.2d 533; *Twombly*, 550 U.S. at 570. Under either the Rule 12(b)(6) standard or the heightened standard for allegations of sham litigation, Defendants must plead some facts supporting an inference that the parties are competitors. *See Oregon Nat.* at 533. All Defendants allege is the unsupported assertion that they expect to match 3M's global pre-pandemic N95 respirator production out of a "small facility" in the next few months. *See* Countercl. ¶¶ 17, 33. Defendants do not claim that they have manufactured or sold even one

---

**Gordon Rees Scully Mansukhani, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

solitary respirator (as opposed to a non-respirator mask). Because Defendants plead no facts

supporting an inference that they are actually a competitor to 3M, they have failed to plead a

necessary element of the sham exception to *Noerr* immunity.

Finally, even if the Court accepted that AIME is a "competitor" to 3M, Defendants have

not pleaded sufficient facts to support an inference that 3M's only objective here is to interfere in

AIME's business. They assert such a *conclusion—see* Countercl. ¶¶ 99-100, 118-119—but they

allege no *facts* supporting that conclusion. Indeed, they do not even take a position as to what

possible anticompetitive ends 3M seeks to accomplish, nor can they. *See id.* at 119. Nothing in

3M's action would prevent AIME from manufacturing and selling respirators, provided they do

not try to defraud their customers into thinking that 3M is involved. Indeed, Defendants do not

actually allege that this lawsuit has actually interfered with their business in any way. They do

admit, however, that they claimed to have access to half of 3M's annual pandemic respirator

production despite having no relationship with 3M or any authorized 3M distributor. Defendants,

therefore, have not established a reasonable inference that 3M's only objective here is

interference.

2.      <u>*3M's successful campaign is not a sham for the serial litigation standard.*</u>

To determine whether a series of lawsuits is a sham, the relevant question is whether "the

legal filings [were] made, not out of a genuine interest in redressing grievances, but as part of a

pattern or practice of successive filings undertaken essentially for purposes of harassment[.]"

*POSCO*, 31 F.3d at 811. This approach requires "some indication as to the merits of these

underlying actions." *Wonderful Real Estate Dev. LLC v. Laborers Int'l Union of N. Am. Local

220*, 119CV00416LJOSKO, 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020). ""Without any

information regarding the merits of the lawsuits," a court cannot evaluate their merits.

Here, Defendants allege no facts about the merits of the other lawsuits. Defendants

simply allege that 3M has filed 18 other lawsuits in response to 4,000 reports of fraud and

profiteering.  Countercl. ¶ 94.[4] This does not establish a pattern of harassment that could abrogate 3M's First Amendment right to seek redress in court. Indeed, even Defendants concede that this pattern suggests that 3M is suing only the worst fraudsters and profiteers. *See id.*

Furthermore, the *POSCO* court recognized that a pattern of success in serial litigation conclusively repels any attack on *Noerr* immunity. *POSCO*, 31 F.3d at 811 ("Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support [plaintiff]'s theory."). Here, 3M has brought 27 lawsuits to date, and has resolved more than half of those cases with either orders or agreements to stop the misconduct. Such a pattern of success precludes any allegation that these lawsuits are baseless. Under *POSCO*, then, 3M's pattern of litigation is reasonable and protected by *Noerr* immunity and the First Amendment.

### C.    *Defendants have not adequately pleaded an antitrust claim.*

"Of course, even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and the subjective components of a sham must still prove a substantive antitrust violation." *Prof'l Real Estate*, 508 U.S. at 60. "Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim." *Id.* Here, Defendants have failed to plead a valid antitrust claim in the most fundamental sense. Even without *Noerr* immunity, then, the Court should dismiss the antitrust counterclaim.

### 1.    *Defendants have not adequately pleaded a market or market power.*

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). "The 'relevant market' and 'market power' requirements apply identically under the two different sections of the Act." *Id.* at n.3. Because Defendants do not identify a relevant product market, a relevant geographic market,

---

[4] The present figures are 24 lawsuits filed based on more than 8,900 reports.

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

or market power, their antitrust claims fail.

a.   <u>Defendants' market identification is insufficient.</u>

"[A]complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Id.* at 1045. The relevant market must encompass "the product at issue as well as all economic substitutes for the product." *Id.* What "economic substitutes" are at issue is governed by "'the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'" *Id.* (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325, 82 S.Ct. 1502 (1962). "The failure to allege a product market consisting of reasonably interchangeable goods renders [a complaint] 'facially unsustainable' and appropriate for dismissal." *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 Fed. Appx. 598, 599 (9th Cir. 2011) (mem. op.) (quoting *Newcal*, 513 F.3d at 1045); *accord Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997).

Defendants have failed to properly define a relevant market. They have not identified any economic substitutes for N95 respirators, which may include such as N99, N100, R95, R99, R100, P95, P99, or P100 filtering facepiece respirators; non-respirator facemasks; elastomeric half-face or full-face respirators; or HEPA powered air-purifying respirators.[5]

Defendants' failure to address any economic substitutes for N95 filtering facepiece respirators is fatal to their claim, and merits dismissal. *See Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 Fed. Appx. 937, 938 (9th Cir. 2011) (district court properly dismissed Sherman Act claim where complaint did not address economic substitutes).

b.   <u>Defendants do not allege market power.</u>

"A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 972

---

[5] The Court should take judicial notice of background information about alternatives to N95 respirators. *See, e.g.*, National Institute for Occupational Safety and Health, *Respirator Trusted-Source Information* (Jan. 29, 2020), https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/respsource1quest3.html (discussing alternatives to N95 respirators); Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19): N95 and Other Respirators* (Sept. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/n95-other-respirators.html (same).

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855
Facsimile: (503) 616-3600

(9th Cir. 2008). Simply alleging that a defendant has market power is not sufficient—the plaintiff must allege factual information about the defendant's position in the market. *See id.*

"A firm has market power when, 'by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices.'" *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 Fed. Appx. 380, 381 (9th Cir. 2018). "To allege market power circumstantially, the plaintiff must: '(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run.'" *See id.* (quoting *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)).

Defendants here have not pleaded any such facts. As discussed above, Defendants have not adequately defined any market. Aside from the conclusory allegation that 3M has a "quasi-monopoly," Defendants have pleaded no *facts* suggesting that 3M has a dominant market share. Nor have Defendants pleaded that there are high barriers to entering whatever market is at issue. To the contrary, Defendants insist that new market entrants like themselves need less than one year to build the capacity to manufacture *one billion* respirators annually. *See* Countercl. ¶ 33. Moreover, Defendants concede that the *secondary market*, not 3M, is driving prices for N95 respirators. *Id.* at ¶ 1 ("[T]he demand for PPE has led to a natural and perfectly normal spike in market prices."). Because Defendants have failed to allege market power, they have failed to state a claim.

### 2.   *Defendants have not pleaded a Section 1 claim.*

A Section 1 claim requires "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually injures competition." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989) (quoting *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir.1988)). The plaintiff "must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail." *Id.* at 508.

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 13

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855
Facsimile: (503) 616-3600

a.   Defendants allege no concerted action.

A Section 1 claimant must allege concerted action. "The conduct of a single firm is governed by § 2 alone . . . ." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767, 104 S. Ct. 2731, 2739, 81 L. Ed. 2d 628 (1984). "It is not enough that a single firm appears to 'restrain trade' unreasonably . . . ." *Id.* Section 1 claims, therefore, require concerted action "between *separate* entities." *Id.* (emphasis in original). Concerted actions of the officers or employees of an entity do not qualify. *Id.* at 769.

Here, Defendants allege no facts at all suggesting that 3M coordinated or conspired with anyone outside the company in bringing its claims. *See* Countercl. ¶¶ 111-20. While they make a passing conclusory allegation to that effect elsewhere in their Counterclaims, *see id.* at ¶ 3, the Counterclaims contain no factual allegations supporting that inference. Because Defendants allege no concerted action, their Section 1 claim fails as a matter of law.

b.   Defendants allege no injury to competition.

A Section 1 claimant must make factual allegations establishing an injury to competition. *Les Shockley Racing*, 884 F.2d at 507-08. Those factual allegations must ordinarily "include proof of the relevant geographic and product markets and demonstration of the restraint's anticompetitive effects within those markets." *Id.* at 508. Alternatively, a plaintiff may offer "proof of actual detrimental competitive effects such as output decreases or price increases. *Id.* If a plaintiff fails "to allege any actual detrimental competitive effects from the challenged restraint, they [must] allege injury to competition within a framework of market analysis." *Id.*

Here, Defendants allege no "detrimental competitive effects" from 3M's lawsuit at all, nor could they. *See* Countercl. ¶¶ 111-20. While Defendants allege a *possibility* of harm to *their speculative future business*, that does not suffice. *See Les Shockley Racing* at 508. "Although proof of [Defendants]' allegations would establish harm to their business interests, such proof would not, standing alone, show injury to competition in the market as a whole." *Id.* "Only when the restraining force of an agreement or other arrangement affecting trade becomes unreasonably

disruptive of market functions such as price setting, resource allocation, market entry, or output designation is a violation of the Sherman Act threatened." *Id.*

For this reason, the Ninth Circuit holds "that section one claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Id.* Because Defendants counterclaims are "disturbingly silent about the effect of their removal" from the relevant (and undefined) market, *see* Countercl. ¶¶ 111-20, they have "failed to state a claim under Sherman Act § 1 that would justify any measure of relief." *See Les Shockley Racing* at 509. The Court should dismiss the Section 1 claim.

### 3.   <u>Defendants have not pleaded a Section 2 monopoly claim.</u>

A Section 2 monopoly claim requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S. Ct. 1698, 1704 (1966). "Monopoly power is the power to control prices or exclude competition." *L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1425 (9th Cir. 1993) (quoting *United States v. E. I. Du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S. Ct. 994, 1005 (1956)).

As discussed above, Defendants make no factual allegations supporting an inference that 3M has power in any relevant market. *See* Part III.C.1.b, *supra*. This is fatal to Defendant's monopolization claim. Furthermore, and also discussed above, there is nothing wrongful or exclusionary about 3M's lawsuit. *See* Part III.B, *supra*. There is, therefore, no Section 2 claim for monopolization on the face of the Complaint.

### 4.   <u>Defendants have not pleaded a Section 2 attempted monopolization claim.</u>

A plaintiff bringing a Section 2 claim for attempted monopolization must prove that "(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 890 (1993). To prove a dangerous

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 15

probability of success, it is "necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.*

Here, Defendants' failure to identify any market or describe factually 3M's power in that market precludes a Section 2 claim for attempted monopolization. Without factual allegations about the market and 3M's place in it, the Court cannot evaluate any whether 3M has a probability of achieving monopoly power. And without any grounds for finding 3M's litigation objectively baseless, the Court cannot infer that 3M has engaged in any "predatory or anticompetitive conduct." And the one area where they have pleaded facts—their expectation to develop capacity in under one year to produce 1 billion masks annually—on its face concedes that market entry is capable of defeating any theoretical attempt at monopoly. There is, therefore, no claim for attempted monopolization.

## IV.     Consumer Protection Act

Defendants' fifth counterclaim is for an alleged violation of Washington's Consumer Protection Act (CPA). *See* Countercl. ¶¶ 121-25. The CPA, like the Sherman Act, bans monopolization and anticompetitive agreements. *See* RCW 19.86.030-040. It also prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." *See* RCW 19.86.020. Defendants allege that 3M's "unfair or deceptive act or practice" was "monopolizing, attempting to monopolize or combining or conspiring with any other person or persons to monopolize any part of trade or commerce, to wit, the market for respirators and masks during the coronavirus pandemic." Countercl. ¶ 122.

Defendants cannot state a CPA claim here, for several reasons. First, *Noerr* immunity applies to this claim. Second, courts interpret monopolization or attempted monopolization claims under the CPA in the same manner as under the Sherman Act. Third, Defendants have not adequately pleaded an effect on the public interest.

### A.     *Noerr* immunity precludes the CPA claim.

*Noerr* immunity applies to CPA claims. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

(9th Cir. 2006) ("[T]he Noerr–Pennington doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."); *see also Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 54-56, 738 P.2d 665, 677 (1987) (applying *Noerr* to CPA antitrust claim). For the reasons discussed above, the First Amendment therefore precludes the CPA claim.

> **B.**     ***Defendants have shown no harm to the public interest.***

A CPA claim requires harm to the public interest. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 37, 204 P.3d 885 (2009). Defendants provide only a conclusory allegation that "3M's unfair and deceptive acts impact the public interest."  Countercl. ¶ 124. The Complaint, however, includes no factual allegations plausibly supporting this conclusion. In reality, 3M's claims which were asserted to *prevent* fraud, are in the public interest. *See Panyanouvong v. Aphay*, No. 2:14-CV-00275 RSM, 2014 WL 2986507, at *6 (W.D. Wash. July 1, 2014). The CPA claim therefore fails.

> **C.**     ***Defendants CPA claim fails for the same reasons as the Sherman Act claims.***

When evaluating claims under RCW 19.86.030 and .040, this Court looks to "the decisions involving comparable federal statutes, like the Sherman Act." *Top Notch Sols., Inc. v. Crouse & Associates Ins. Brokers, Inc.*, C17-827 TSZ, 2017 WL 5158525, at *4 (W.D. Wash. Nov. 7, 2017). Defendants' CPA antitrust claim therefore fails for the same reasons as their Section 1 and 2 Sherman Act claims. *See id.*; *accord MiniFrame Ltd. v. Microsoft Corp.*, 551 Fed. Appx. 1, 3 (2d Cir. 2013).

**V.     Tortious Interference with Prospective Economic Advantage**

Defendants' fifth counterclaim is for interference with prospective economic advantage. *See*  Countercl. ¶¶ 126-31. That claim has five elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 17

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

(5) resultant damage." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276, 280 (2006). This claim belongs to AIME alone; Baciack and Bingham cannot state a claim for interference with the entity's opportunities. *See Rosenthal v. R. W. Smith Co.*, 260 F. Supp. 3d 588, 597 (W.D. Va. 2017) (no tortious interference claim available to owner of business with an expectancy); *see also Semida v. Rice*, 863 F.2d 1156, 1161 (4th Cir. 1988) (same). As to AIME, Defendants have not pleaded facts supporting any of the elements.

### A.    *Defendants have not pleaded a business expectancy.*

"Washington courts require a plaintiff to show only that its 'future business opportunities are a reasonable expectation and not merely wishful thinking.'" *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 769, 436 P.3d 397, 405 (quoting *Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 337, 364 P.3d 129 (2015)). Defendants, however, have alleged no facts supporting an inference that their prospective sales were more than mere fantasy.

While Defendants allege that they were in negotiations with several governments for the sale of respirators—*see* Countercl. ¶¶ 127—Defendants do not plead that they possessed any respirators to sell to those entities. *See id.* ¶¶ 126-31. Even if they did, the facts they have admitted and pleaded would undermine any inference of an expectancy—after months of ramping up production, 3M only manufactured 1.1 billion respirators on an annual basis in early 2020, and AIME's alleged source purported to have *500 million* respirators available for sale. *See* Compl. ¶¶ 43-44; Ans. ¶¶ 43-44; Countercl. ¶ 60. There is, therefore, no *plausible* inference that the Defendants actually had a source for authentic 3M respirators.

Nor do the Defendants allege any facts from which the Court could infer that the "negotiations" were of any substance at all. No reasonable person, considering the allegations made in the counterclaims, could infer that Defendants had a valid business expectancy.

### B.    *Defendants have not pleaded that 3M knew of their alleged expectancy.*

One cannot plead the knowledge element of tortious interference with a conclusory statement that the defendant had knowledge. *See Capitol W. Appraisals LLC v. Countrywide Fin.*

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 18

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

*Corp.*, 467 Fed. Appx. 738, 740 (9th Cir. 2012) (mem. op.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951 (2009)). "The Ninth Circuit has found such conclusory allegations insufficient." *Lai v. USB-Implementers Forum, Inc.*, CV1405301RGKPJWX, 2015 WL 12746705, at *8 (C.D. Cal. Mar. 11, 2015) (citing *Capitol W.* at 739).

Here, however, Defendants merely recite the knowledge element without alleging any facts supporting an inference that 3M knew of their supposed "negotiations." *See*  Countercl. ¶ 129. "These conclusory statements are not entitled to the presumption of truth, and are insufficient to plead [3M]'s knowledge. *Capitol W. Appraisals* at 740; *accord Dynasty Mgmt., LLC v. UMG Recordings, Inc.*, 759 Fed. Appx. 784, 788 (11th Cir. 2018). The claim fails.

**C.      Defendants have not adequately pleaded improper means.**

"Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1189 (W.D. Wash. 2019) (quoting *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158, 52 P.3d 30, 34 (2002), as corrected (Sept. 23, 2002)). When one alleges intentional interference by way of "making false statements to potential customers," the allegation must satisfy Rule 9(b)'s heightened pleading requirement." *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 734–35 (N.D. Ill. 2018); *accord BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, C10-1053, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (insufficient averments of fraud in non-fraud claims should be disregarded, and the claims evaluated as if those averments were not pleaded).

In the Ninth Circuit, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). To satisfy this standard, plaintiffs must plead the "'specific content'" of the alleged representation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 19

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004)). They must also "'set forth what is false or misleading about [the] statement, and why it is false.'" *Vess*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir.1994)).

Here, Defendants' averment that 3M informed AIME's "prospective customers" of 3M's "baseless allegations" does not satisfy Rule 9(b). Defendants offer no factual allegations about what 3M said, to whom 3M said it, how 3M said it, or when 3M said it. If Defendants want to accuse 3M of making fraudulent representations to AIME's prospective "customers," they must comply with Rule 9(b).[6] Because they have not, the claim fails.

> **D.**   ***Defendants have not pleaded damages.***

Pecuniary loss is a necessary element of a tortious interference claim under Washington law. *Tamosaitis v. Bechtel Nat., Inc.*, 182 Wn. App. 241, 250, 327 P.3d 1309, 1314 (2014). A plaintiff must establish a reasonable certainty of monetary damages flowing from the lost opportunity. *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 776, 436 P.3d 397, 409 (2019). Here, Defendants have pleaded no facts supporting an inference that they have suffered a pecuniary loss, because they have alleged no facts supporting an inference that they could have entered profitable contracts with any other party. There is no allegation that they had product to sell, or that their cost for obtaining the product would have allowed them to make a profitable sale to any of the named prospects. The claim therefore fails.

## VI.   False Light and Defamation by Implication

Defendants sixth and seventh counterclaims are for false light and defamation by implication. "Defamation and invasion of privacy by false light are similar, yet distinct, causes of action." *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 564, 438 P.3d 606, 611, review denied, 193 Wn.2d 1041, 449 P.3d 657 (2019). "The theoretical difference between the two torts is that a

---

[6] Alternatively, if 3M's representations to these "customers" were not fraudulent, then there is no allegation of wrongful means and the claim fails.

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

defamation action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensating for injured feelings or mental suffering." *Id.* at 612 (quoting *Eastwood v. Cascade Broad. Co.*, 106 Wash.2d 466, 471, 722 P.2d 1295 (1986)). Only natural persons may assert false light claims. *Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 339, 364 P.3d 129, 139 (2015) ("Only a living individual whose privacy has been invaded can maintain an action for invasion of privacy."). AIME, as a corporation with no privacy right, may not. *See id.*

A false light claim under Washington law requires a plaintiff to show (1) that the "defendant publishe[d] statements that place a plaintiff in a false light"; (2) that "the false light would be highly offensive"; and (3) that "the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in." *Id.* at 612.

"A prima facie defamation claim requires a plaintiff to prove falsity, an unprivileged communication, fault, and damages." *Id.* Defamation by implication occurs when "otherwise true statements create[] a false impression by omission of material facts . . . ." *Yeakey v. Hearst Commc'ns, Inc.*, 156 Wn. App. 787, 792, 234 P.3d 332, 335 (2010) (quoting *Mohr*, 153 Wn.2d 812, 823, 108 P.3d 768, 774 (2005)). The plaintiff must show each element of defamation, but may establish the falsity element by showing "that the communication left a false impression that would be contradicted by the inclusion of omitted facts." *Id.* at 827.

Defendants have not stated a claim for four reasons. First, they have failed to comply with a condition precedent. Second, they complain of absolutely privileged communications. Third, they have not established the "juxtaposition" of statements they rely on. Fourth, Washington does not recognize defamation by implication claims based on juxtaposition.

**A.**   ***Defendants have not satisfied a condition precedent for these claims.***

Under Washington law, one may not state a claim for false light or defamation without making "a timely and adequate request for correction or clarification from the defendant . . . ." RCW 7.96.030-.040. A request is adequate only if it: "(a) Is made in writing and reasonably

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 21

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

identifies the person making the request; (b) Specifies with particularity the statement alleged to be false and defamatory or otherwise actionable and, to the extent known, the time and place of publication; (c) Alleges the defamatory meaning of the statement; [and] (d) Specifies the circumstances giving rise to any defamatory meaning of the statement which arises from other than the express language of the publication[.]" *Id.* at .040(b)(3).

Defendants' counterclaim does not comply with this standard. Rather than specify any particular statement and explain its falsity, Defendants gesture generally to 3M's website and assert that "[t]he defamatory meaning of the statements is self-evident . . . ." Countercl. ¶¶134-137. Because Defendants have failed to comply with RCW 7.96.040 (despite citing it themselves), a condition precedent to the claim is unmet. The Court should dismiss the claim.

**B.** **3M's statements in and about this litigation are absolutely privileged.**

Defendants complain that they are defamed and put in a false light when one "carefully juxtaposes" two categories of statements by 3M: (1) 3M's website's statements about its litigation efforts to combat COVID-related fraud and price-gouging (which Defendants do not even allege mention Defendants at all), and (2) 3M's allegations in this action. *See* Countercl. ¶¶ 133-138, 148. The claim must fail because the statements are absolutely privileged.

"Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought . . . ." *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285, 1286 (1980); *see also* Restatement (Second) of Torts § 652F, cmt. a (1977) (defamation privileges apply to privacy torts). "The privilege applies to in-court statements and out-of-court statements that are pertinent or material to the redress or relief sought." *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, 13-CV-05214-RBL, 2014 WL 1494100, at *4 (W.D. Wash. Apr. 16, 2014) (citing *Demopolis v. Peoples Nat. Bank of Washington*, 59 Wn. App. 105, 109, 796 P.2d 426, 429 (1990)).

Here, Defendants do not allege that 3M has published any false statements about them outside of the docket of this case. *See* Countercl. ¶¶ 132-152. Instead, Defendants claim rests on

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

a theory that one aware of both the Complaint and the website statements would understand that 3M has accused the Defendants of being fraudsters and price-gougers. This theory cannot stand under Washington law; 3M's in-court statements are absolutely privileged so long as they are pertinent to the relief sought. *McNeal*, 95 Wn.2d at 267. Here, 3M seeks to enjoin Defendants from using 3M's name and marks, and alleges that Defendants have misused 3M's name and marks in the past. Clearly, the allegations are pertinent to the sought-after relief.

3M's out-of-court statements "pertinent to" the proceedings are also privileged. *Tacoma Therapy*, 2014 WL 1494100, at *4. Even if Defendants alleged that 3M had mentioned them on its website, the statements would be privileged.

Moreover, because Defendants' complaints about the website statements turn on the allegations in the lawsuit, allowing Defendants to use the privileged litigation statements to frame the website statements would vitiate the manifold public policies underlying the litigation privilege. Even if the website communications were not privileged, it would be improper to allow the Plaintiffs to use those statements to make and end-run around the litigation privilege.

**C.      *Defamation-by-juxtaposition is not actionable in Washington.***

Privilege aside, Defendants theory fails because Washington does *not* recognize defamation by juxtaposition as Defendants have pleaded it. Defamation by implication occurs when "otherwise true statements create[] a false impression by omission of material facts . . . ." *Yeakey*, 156 Wn. App. 792 (quoting *Mohr*, 153 Wn.2d 812, 823, 108 P.3d 768, 774 (2005)).

Here, however, Defendants complain not of any *omissions* in 3M's website statements; but of the website statements' implication in light of the litigation statements.  Countercl. ¶ 137. Their theory, therefore, does not comport with Washington law, and fails.

**D.      *Defendants have not established an actionable juxtaposition of statements.***

Even if Washington embraced a juxtaposition theory, it would not apply in this case. Defendants' claim seems to rest on dicta from *Mohr*, in which the Washington Supreme Court quoted Prosser and Keaton for the proposition that defamation-by-implication can occur when

---

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 23

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600

"the *defendant* juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Mohr*, 153 Wn.2d at 823 (emphasis added) (quoting *Torts* at 117).[7] But Defendants do not actually allege that *3M* has juxtaposed the Complaint's allegations with statements on its website *See* Countercl. ¶¶ 133-135. Instead, Defendants allege that *third parties* have (and may) do so. *See id.* at ¶¶ 142-44.

This is not juxtaposition *by 3M* as required for defamation-by-implication. To "juxtapose" is to "plac[e] two or more things side by side or near one another." Juxtaposition, Black's Law Dictionary (11th ed. 2019). There is no allegation that *3M* has set side-by-side its Complaint in this action with the statements on its website. Defendants' theory fails.

## CONCLUSION

Defendants have not validly asserted even one counterclaim. The Court should dismiss the counterclaims.

Dated: November 20, 2020

By: *s/ W. Gregory Lockwood*
Nancy M. Erfle, WSBA No. 20644
nerfle@grsm.com
W. Gregory Lockwood, WSBA No. 52232
wglockwood@grsm.com
*Attorneys for Plaintiff 3M Company*

---

[7] This dicta is not a statement of Washington law. *Yeakey*, 156 Wn. App. at 792.

MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 24

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97204
Telephone:  (503) 382-3855
Facsimile:  (503) 616-3600