HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 3M COMPANY,<br><br>               Plaintiff,<br><br>   vs.<br><br>AIME LLC, MARK BACIAK, AND MICHAEL BINGHAM,<br><br>               Defendants. | Case No. 2:20-cv-01096-RAJ<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**<br><br>NOTE ON MOTION CALENDAR:<br>January 29, 2021 |

## INTRODUCTION

The underlying nature of this case cannot be disputed. During the COVID-19 pandemic, Defendants attempted to profit by selling 3M N95 respirators that, based on the volume offered, they could not possibly possess or procure for prices that greatly exceeded 3M's published list price. *See* Dkt. # 17 at ¶¶ 59-60. Further, Defendants misappropriated 3M's name and trademarks to falsely claim that they had an association with 3M. In doing so, Defendants offered documents that purported to be produced by 3M or referenced 3M and falsely asserted that 3M would be involved in the sales and tracking process. 3M has filed multiple similar cases across the country because many other pandemic-profiteers used the same scheme as Defendants. 3M seeks solely to stop this unlawful behavior.

Contrary to Defendants' assertions, 3M does not seek to stifle competition.[1] 3M does not dispute Defendants' right to sell their own products or other products. 3M seeks limited relief to prevent Defendants only from misusing 3M's name, reputation, and trademarks to bolster their

---

[1] 3M had no idea that AIME intended to produce its own respirators until well after the lawsuit was filed. There are more than 30 NIOSH approved N95 surgical respirator producers. U.S. Centers for Disease Control and Prevention, Respirator Trusted-Source Information: Surgical N95 Respirators, https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/respsource3surgicaln95.html (last accessed Jan. 26, 2021). AIME is not among them.

| | |
|---|---|
| PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS – Page 1 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97204<br>Telephone: (503) 382-3855 |

business, and to stop harming customers and 3M's reputation, by attempting to sell purported 3M products that they could not possibly supply at unreasonably high prices.

The antitrust claims asserted against 3M are meritless. 3M's right to bring claims to protect its trademarks and reputation in court is protected by the First Amendment of the U.S. Constitution and *Noerr-Pennington* immunity. Far from being sham litigation, 3M has successfully prosecuted claims against similar defendants across the United States. 3M expects to be similarly successful against these Defendants. Defendants' remaining state law claims fail for the same reasons. 3M has the right to protect its reputation and protect consumers by bringing targeted actions to prevent price gouging and misrepresentation regarding 3M's products in the marketplace. 3M's actions are just, proper, and not at all tortious.

The Court should not allow Defendants' conspiracy-ridden, factually and legally unsupported, and poorly pled claims to stand.[2] Instead, Defendants' counterclaims should be dismissed with prejudice.

## ARGUMENT AND AUTHORITY

**I. The antitrust claims should be dismissed.**

Defendants' antitrust claims are based on 3M's allegedly "predatory litigation" against them. Dkt. # 25 at 10. But filing litigation is a core First Amendment activity that is protected from antitrust liability under the *Noerr-Pennington* doctrine. In addition, *Noerr-Pennington* immunity extends to public statements about litigation. *See Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986). Defendants' antitrust counterclaim is barred by *Noerr-Pennington* unless they can allege facts showing that 3M's lawsuit fits within the narrow "sham" exception to that doctrine. *See* Dkt. # 25 at 12-14.

---

[2] Defendants' claims are belied by their own website, which notes: "In the current pandemic, we at AIME have borne witness to a barrage of fly-by-night companies represented by brokers who claim to have access to hundreds of millions, often billions, and every once in a while, trillions, of 3M 1860 N95 masks. Now, taking into account that by 3M Corporation's own admission, their global yearly manufacturing capacity cap is at 1.1 billion masks, the vast discrepancy is readily visible." *See* https://www.aimeusa.com/legal/legal (last accessed Jan. 25, 2021). AIME fails to inform its customers that it was one of these dishonest companies. AIME's attempt to withdraw this admission in its answer demonstrates the lack of good faith with which these counterclaims were asserted.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 2

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

Defendants seem to argue that their claims fit the sham exception under two theories. First, they argue that 3M's lawsuit, on a standalone basis, is a sham because it is objectively baseless and designed to injure them—not through the requested relief, but merely by the litigation process. Second, they assert that 3M's lawsuit should be considered part of "a pattern of baseless, repetitive claims." Dkt. # 25 at 13 (citing Dkt. # 17 ¶¶ 116, 117). The counterclaim's "sham" allegations do not satisfy any pleading standard, much less the "heightened pleading standard" the Ninth Circuit applies to claims involving "the right to petition governmental bodies under *Noerr-Pennington*." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). Thus, both theories fail.

### A. *3M's lawsuit is not a sham because it is not objectively baseless.*

Under the Ninth Circuit's two-part test for whether a standalone action constitutes a sham, the action must first be "objectively baseless" in the sense that no reasonable litigant could realistically expect success on the merits. *See USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). "If the suit turns out to have objective merit, the [antitrust] plaintiff can't proceed to inquire into subjective purposes, and the action is perforce not a sham." *Id.* The counterclaim fails at this first step.

Defendants make no factual allegations that 3M's lawsuit is objectively baseless. Nor can they. The only counterclaim allegation they reference, that "3M's lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," is conclusory boilerplate, devoid of any facts. Dkt. # 25 at 13, Dkt. # 17 ¶ 116. It should be disregarded under any pleading standard—let alone the heightened standard applicable here. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Oregon Nat. Res. Council*, 944 F.2d at 536 (citing *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

(9th Cir. 1988)) ("Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection.").

Defendants also point to their disagreements with 3M's claims, arguing that "there has been no fraud claim asserted against AIME, and the alleged 'profiteering' is not illegal under Washington law…" Dkt. # 25 at 11. These disputes or denials of 3M's arguments are just that; they are not factual allegations supporting Defendants' counterclaims. As the Ninth Circuit has recognized, "the heightened pleading standard of *Franchise Realty* [*Interstate Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076 (9th Cir. 1976), *cert. denied*, 430 U.S. 940 (1977)] would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Oregon Nat. Res. Council*, 944 F.2d at 536 (citing *Omni Resource Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984)); *see also Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998) (citing same).

Moreover, a defendant asserting that a multi-count complaint is a sham is required to plead facts showing that *each count* is baseless. *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1221 (E.D. Cal. 2005) (dismissing antitrust counterclaim under *Noerr-Pennington* where counterclaimant alleged that only one of eight claims was baseless). 3M's Complaint alleges six counts against Defendants, Dkt. # 1 ¶¶ 78-120, and outside of the bare assertion that "no reasonable litigant could realistically expect success on the merits," Defendants make no effort to explain why *any*, let alone *all*, of those six counts are "objectively baseless." Defendants thus come nowhere close to meeting their burden to plead facts sufficient to show that 3M's lawsuit was not merely likely to fail, but was entirely without merit.

In fact, Defendants allege compelling facts showing that 3M's complaint is *not* objectively baseless—specifically, that 3M has filed multiple lawsuits that Defendants admit are similar to this one. 3M has prevailed in most already, and lost not a single one. Dkt. # 17 ¶¶ 93-

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 4

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

95, 117; *see also* Dkt. # 25 at 5 n. 2, 13, 15.[3] While Defendants label these cases "cookie cutter" suits and complain that in some no one appeared to defend against 3M's claims, Dkt. # 25 at 5, that hardly suggests 3M's claims are baseless. In this case, 3M's complaint is supported by specific allegations of Defendants' misconduct. *See* Dkt. # 1 ¶¶ 53-70. As Defendants concede, federal courts across the country have held that 3M's lawsuits are likely to succeed on the merits; that the public could suffer harm without granting 3M's relief; and in nine cases, entered judgment (some consent, some not) in favor of 3M.[4] Defendants would have the Court believe that each of those courts entered judgment for 3M on objectively baseless legal claims.

### B. Defendants fail to allege facts showing that 3M intended to use the litigation process, not its outcome, anticompetitively.

Since Defendants failed to plead facts plausibly stating a claim that 3M's lawsuit is objectively baseless, the action is "perforce not a sham[.]" *POSCO,* 31 F.3d at 811. The Court thus does not need to reach the second prong of the sham test, which requires that Defendants allege facts showing that 3M intended to use the litigation process—not the result of the litigation—to prevent Defendants from competing with 3M. *Id.* But Defendants also fail this test for one simple reason: nothing in 3M's lawsuit would prevent Defendants from competing with 3M by making and selling Defendants' own PPE, as they have allegedly planned. Dkt. # 17 ¶¶ 4, 17.[5] Rather, 3M's lawsuit, as Defendants allege and the Complaint itself shows, seeks simply to prevent Defendants from claiming that they are affiliated with 3M or have legitimate direct access to 3M's PPE. Dkt. # 1 ¶¶ 5, 7, 58, 72, 107. Preventing Defendants from falsely passing themselves off as 3M authorized distributors hardly prevents them from competing with 3M.

---

[3] Defendants sometimes allege 9 such cases, sometimes 18, and in the Opposition mention 27, but the actual number is irrelevant for present purposes.

[4] *See, e.g.*, *3M Co. v. Nationwide Source Inc*., No. 20-CV-2694 (WMW/KMM), 2021 WL 141539, at *6 (D. Minn. Jan. 15, 2021) ("3M has demonstrated a likelihood of success on its trademark-infringement claim against Nationwide"); *3M Co. v. Puznak*, No. 1:20-CV-1287-RLY-TAB, 2020 WL 4538897, at *1 (S.D. Ind. June 5, 2020) ("Based on the foregoing, 3M is likely to suffer irreparable harm in the absence of a preliminary injunction."); *3M Co. v. Geftico*, LLC, No. 620CV648ORL41GJK, 2020 WL 2079289, at *3 (M.D. Fla. Apr. 30, 2020) ("In light of the COVID-19 global pandemic and the harm that could occur should fraudulent masks be introduced by Defendant into the public, the Court finds that a TRO is necessary here").

[5] Defendants' bare assertion that 3M sued Defendants "to stifle its competition," Dkt. # 25 at 13, "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal marks omitted).

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 5

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

The far more plausible explanation for 3M's lawsuit is readily apparent, and unlike Defendants' theory, is entirely consistent with the relief 3M seeks: 3M sued to protect its good name, reputation, trademark, and users of 3M's N95 respirators who "deserve trustworthy supply lines of authentic PPE, including N95 respirators, that are free of misrepresentations, false designations of origin, and unscrupulous profiteering." *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 198 (S.D.N.Y. 2020).

### C. *3M has not engaged in a pattern of baseless litigation*.

Defendants' antitrust counterclaim fares no better under the Ninth Circuit test for applying the sham exception to *Noerr-Pennington* to serial litigation. That test asks: "were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *POSCO*, 31 F.3d at 811 (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512 (1972)). This test is informed by "some indication as to the merits of these underlying actions." *Wonderful Real Estate Dev. LLC v. Laborers Int'l Union of N. Am. Local 220*, 119CV00416LJOSKO, 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020).

The only allegations Defendants point to are conclusory boilerplate that simply recite the legal tests and are entirely lacking in any facts. Dkt. # 17 ¶ 117; *see* Dkt. # 25 at 15. Other than admitting that 3M has prevailed in most of these cases and lost none, Defendants allege nothing about the underlying merits. Courts routinely dismiss similar claims under *Noerr-Pennington*.[6]

---

[6] *See, e.g.*, *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1046 (9th Cir. 2009) (declining to apply sham litigation exception to Abbott's seventeen lawsuits where there was insufficient evidence in the record and a pattern of success in defending them); *POSCO*, 31 F.3d at 811 (declining to apply sham litigation exception where unions won fifteen of twenty-nine suits such that they could not be filed without merit); *Entrepreneur Media, Inc.*, 2019 WL 4187466, at *5 (dismissing antitrust counterclaim because sham litigation exception does not apply where defendant did not sufficiently plead allegations even though plaintiff was involved in extensive enforcement of their trademark); *Am. Nat'l Mfg. Inc.*, 2016 WL 9450472, at *4 (dismissing antitrust counterclaim because sham litigation exception does not apply where plaintiffs only offer conclusory allegations); *Andersen v. Atl. Recording Corp.*, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009) (holding that sham litigation exception does not apply where defendant extensively enforced rights and had record of success in the cases they brought, the large number of proceedings was a result of the large number of infringers); *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 WL 986995, at *22 (C.D. Cal. Feb. 22, 2000) (declining to apply sham litigation exception where only allegations were conclusory statements about motive and information on the identity of the parties being sued without any information on the merits).

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 6

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

For example, in *American National*, the plaintiffs alleged that the defendants had sued almost every participant in the relevant market, resulting in 59 suits and 129 cease-and-desist letters for trademark and patent infringement and false advertising. 2016 WL 9450472, at *4. The Court held that *Noerr-Pennington* immunity applied in the absence of anything other than conclusory allegations that each action was objectively baseless and motivated by a desire to injure the market or harass rather than for genuine redress. *Id.; see also Entrepreneur Media, Inc.*, 2019 WL 4187466, at *5 (holding that "[a] bare allegation of a history of failed claims" is insufficient to meet the sham exception because engaging in extensive trademark enforcement does not mean each claim was without merit).

Moreover, Defendants' concession that 3M is prevailing in its anti-fraud respirator litigations is equally fatal to their theory. In *POSCO*, the court held that the sham exception to *Noerr-Pennington* did not apply when fifteen of the twenty-nine lawsuits alleged to be part of the pattern had been successful; "[g]iven that the plaintiff has the burden in litigation, a batting average exceeding .500" doomed the sham theory as a matter of law. 31 F.3d at 811. In fact, batting over .500 is not even a must -- in *Kaiser*, Abbott won only seven out of seventeen suits against would-be generic manufacturers of terazosin hydrochloride, but was nevertheless protected by *Noerr-Pennington* because all seventeen cases raised *plausible* arguments. 552 F.3d at 1046. Here, 3M is batting 1.000 and thus Defendants' counterclaims are a swing and a miss.

The reason 3M has brought its anti-fraud lawsuits is hardly a mystery. Regrettably, the pandemic has given rise to the worst in shameless profiteering and fraud, with a surge in attempts to mislead customers and unlawfully profit from the strength of 3M's name and reputation. 3M has brought several lawsuits because healthcare workers, first responders, and others on the front lines of the fight against COVID-19 deserve genuine 3M respirators at a fair price.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 7

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

### D. *Defendants have failed to adequately plead an antitrust claim*.

Defendants also fail to allege the basic elements of an antitrust claim for the reasons identified in 3M's Motion. *See* Dkt. # 23 at 11-16. Defendants barely responded to these points, and so we address only a few dispositive matters here.

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008); *see also Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, of course, something greater than market power under § 1."). Defendants do neither.

*First*, Defendants' assertion that the market is "N95 masks" is insufficient as a matter of law because they make no attempt to account for the numerous "reasonably interchangeable goods" identified in 3M's Motion. *See* Dkt. # 23 at 12. "The failure to allege a product market consisting of reasonably interchangeable goods renders [a complaint] 'facially unsustainable' and appropriate for dismissal." *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 Fed. Appx. 598, 599 (9th Cir. 2011) (mem. op.) (quoting *Newcal*, 513 F.3d at 1045); *accord Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997).

*Second*, Defendants must also allege that 3M has market power (for the § 1 claim) or monopoly power (for the § 2 claim). But while Defendants allege 3M has a high share in their untenable "N95 market," "[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995).

Defendants allege that AIME—in just one year, from its "small facility"—will be able to produce "one billion respirators per year in the U.S." and "exceed 3M's stated global production

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 8

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

capacity." Dkt. # 17 ¶¶ 4, 17, 78. And, Defendants allege, they will be able to sell this stupendous quantity of respirators "at prices that are less than 3M's prices." *Id.* ¶ 78. Defendants could not more clearly allege that rivals can quickly enter, expand, and challenge 3M's prices, thus negating their claim that 3M has market or monopoly power and defeating their antitrust claims.[7] *See Metro Mobile CTS, Inc. v. NewVector Commc'ns, Inc.*, 892 F.2d 62, 63 (9th Cir. 1989) ("it is axiomatic that monopoly power is unlikely to arise in dynamic industries marked by a rapidly expanding volume of demand and low barriers to entry").

Nor do Defendants allege facts showing the "agreement" required to state a § 1 claim. *See* Dkt. # 23 at 14. They assert that "Providence collaborated with 3M regarding this lawsuit," Dkt. # 25 at 15, but no facts alleged in the Counterclaim suggest that Providence did anything other than report Defendants' suspicious behavior to 3M—which is a far cry from alleging that Providence (a non-party) has an agreement with 3M to engage in the "predatory litigation" that is the crux of Defendants' antitrust claim.[8] Likewise, Defendants' reference to 3M's collaboration "with law enforcement and technology companies to *combat fraud*," Dkt. # 25 at 15 (emphasis added), doesn't allege any *agreement* between 3M and anyone to bring supposedly sham litigation against Defendants. It also runs headlong into *Noerr-Pennington. See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379 (1991) (rejecting "any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade'").

For the foregoing reasons, Defendants' antitrust claim should be dismissed.

---

[7] Defendants allege that 3M can control prices because it can tell its distributors what they can charge for 3M respirators. Dkt. # 25 at 16. But that fundamentally misunderstands antitrust law. The "power to control price" is not the power to set the price of your own product—it is the power to set the market price without regard to your competitors, about which Defendants allege nothing. *See TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) ("a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product" ). Defendants are also mistaken that manufacturers have unfettered discretion to set resellers' retail prices, *see Leegin Creative Leather Prod., Inc. v. PSKS, Inc*., 551 U.S. 877, 907 (2007), but the Court need not address that point.

[8] Nor do Defendants try to explain why Providence would conspire with 3M to reduce competition in a market (however defined) in which Providence is a buyer that would suffer the consequences of any reduction in competition.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 9

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

**II. The state-law claims should be dismissed.**

Based on Defendants' limited discussion of the state law claims, 3M relies primarily on the discussion in its motion. However, as noted below, Defendants' response misses the mark on several notable points. All the state law claims should be dismissed with prejudice.

**A.** *Abuse of Process: Publishing statements on a website is not legal process.*

Defendants contend that statements on 3M's website about ongoing 3M efforts to combat fraud and alert the public to fraudulent behavior satisfy the requirements of "an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." Dkt. # 25 at 10 (quoting *Batten v. Abrams*, 28 Wn. App. 737, 748, 750 (1981)). This argument is facially false and nonsensical. Posting on the internet is not "using legal process." Defendants offer no authority to the contrary.

**B.** *WCPA: Noerr-Pennington immunity bars the state competition claims.*

Defendants misrepresent 3M's authority for the proposition that *Noerr-Pennington* immunity applies to WCPA claims. Indeed, they ignore completely 3M's citation to *Boeing Co. v. Sierracin Corp.*, in which the Washington Supreme Court applied *Noerr-Pennington* in a WCPA antitrust case. *See* Dkt. # 23 at 17 (citing 108 Wn.2d 38, 54-56 (1987)). Defendants also misrepresent *Sosa v. Direct TV, Inc.*, in which the Ninth Circuit explicitly held that *Noerr-Pennington* applies to any effort to use state law to impair the right to petition the courts. 437 F.3d 923, 931 (9th Cir. 2006).

Defendants also fail to plead a public injury as part of their WCPA claim. While Defendants claim that they have "102 paragraphs" supporting the notion of a public harm, they fail to identify *even one* factual allegation showing that the public somehow has suffered as a result of 3M's efforts to fight fraud and price gouging during the pandemic.

**C.** *Tortious Interference: Defendants failed to plead intent or harm.*

Defendants fail to adequately plead their tortious interference claim. Essentially, they allege that Providence brought Defendants' suspicious practices to 3M's attention and later

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 10

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

cooperated with 3M's investigation into those practices. Dkt. # 17 at ¶ 61. No other potential transactions are pled with specificity. Their allegations hardly suggest Providence (or anybody else) was eager to do more business with Defendants or that 3M unlawfully disrupted them.

More importantly, Defendants could have never possessed or had access to the number of 3M N95 respirators they offered to sell. Given that they could not have made the sales, there can be no damages.

### D. *Defamation: 3M's statements in its Complaint are not actionable.*

Defendants' argument that 3M's website's statements are not privileged is completely irrelevant. Defendants concede that 3M's website has never mentioned them, but complain that 3M's Complaint in this action colors statements on the website. However, the Complaint is absolutely privileged. Defendants cannot make those privileged statements actionable by juxtaposing them with statements on 3M's website that do not mention Defendants. Defendants' citation to *Mohr* is unavailing. The Court of Appeals has *explicitly* held that the "quotation in *Mohr* was dicta and did not serve to change the standard articulated in *Lee* [*v. Columbian, Inc.*, 64 Wn. App. 534, 536 (1991)]." *See Yeakey v. Hearst Commc'ns, Inc.*, 156 Wn. App. 787, 791 (2010).[9] Contrary to their argument, *Mohr* did not create a right of defamation by juxtaposition and Defendants' defamation claim fails as matter of law.

### E. *Malicious Prosecution: 3M's claims against Defendants are well-founded.*

Defendants argue that *Brin v. Stuzman* allows malicious prosecution claims where one cause of action in a complaint is invalid. *See* 89 Wn. App. 809, 820 (1998). They have misrepresented *Brin*, which merely left that possibility open *only* when the invalid cause was "separate and severable" from the rest of the complaint. *See id.* That dicta does not apply in this case because none of 3M's claims are "separate and severable"; they are "simply different theories for recovering on the same injury[.]" *See id.* (quoting *Tabaz v. Cal Fed Finance*, 27

---

[9] 3M cited *Yeaky* in its opening brief, making Defendants' decision to cite the *Mohr* dicta less persuasive and arguably incomplete.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 11

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

Cal.App.4th 789, 33 Cal.Rptr.2d 134, 137 (1994)). Moreover, the *Brin* court noted that the foreign cases embracing Defendants' view "would not necessarily be persuasive" because it did not "adhere to Washington's restrictive view of malicious prosecution claims." *Id.* at 821.

Regardless of *Brin*, however, all of 3M's claims are based in fact and supported by existing law. Defendants make the unsupported allegation that price gouging is legal in Washington; it is not. The WCPA prohibits all "unfair . . . acts or practices in the conduct of any trade or commerce[.]" RCW 19.86.020. The act is to be "liberally construed[.]" RCW 19.86.920. And, in any event, Defendants' profiteering is only part of the WCPA claim.

Defendant's arguments about the first sale doctrine likewise fail. 3M has not sought to enjoin Plaintiffs from reselling genuine 3M respirators, if they had any. Instead, 3M complains that Defendants have falsely represented an affiliation with 3M by *inter alia* (1) offering an inauthentic document misrepresenting 3M's involvement in AIME's transaction, and (2) falsely stating that orders placed with AIME could be tracked on 3M's website. This is not a case where AIME stands accused of merely using "3M" to describe 3M's products. This is the case of Defendants misusing 3M's name and inventing a fictitious relationship with 3M to sell products it neither possessed nor was able to acquire. The first sale doctrine is irrelevant.

Defendants also suggest that 3M's previous success with this theory in *ex parte* TRO hearings does not give 3M reason to believe that its theory is valid. *Ex parte* TROs are extraordinary remedies, granted sparingly—for which a judicial finding of *likelihood of success on the merits is a core requirement*. Succeeding against that standard supports a reasonable belief one can prevail at trial. Moreover, 3M has won repeatedly on this theory. *See supra* n. 4.

Defendants' argument that each and every one of the federal judges in those other cases was unaware of the first sale doctrine, or did not understand it, is as unfounded and unpersuasive as the rest of Defendants' arguments. *See, e.g.*, *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) ("We assume that district judges know the law[.]").

Finally, Defendants' argument regarding their damages allegations is unavailing. All

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS – Page 12

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97204
Telephone: (503) 382-3855

Defendants offer is speculation regarding vague "negotiations." Mere speculation that AIME might have made profitable sales—without more—cannot support a claim. *See, e.g.*, *Wilkerson v. Wegner*, 58 Wn. App. 404, 409 (1990).

## **CONCLUSION**

3M brought this case because healthcare workers, first responders, and others on the frontlines of the fight against COVID-19 deserve genuine 3M N95 respirators at a fair price. Those efforts should not be condemned, but commended. This Court should decline Defendants' invitation to be the first court to stifle 3M's efforts to stop fraud and price gouging during a pandemic. Defendants' counterclaims are unsupported by any plausible factual allegations and wrong on the law. The Court should see through them, and dismiss the counterclaims with prejudice.

Dated: January 29, 2021.

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ W. Gregory Lockwood*
Nancy M. Erfle, WSBA No. 20644
nerfle@grsm.com
W. Gregory Lockwood, WSBA No. 52232
wglockwood@grsm.com

*Attorneys for Plaintiff 3M Company*

# CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that I am over the age of 18, and on this date I caused a copy of the foregoing document to be served as stated below:

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of Oregon at Portland, addressed as set forth below.

☐ by transmitting via electronic delivery (e-mail) the attached document(s) to the e-mail address(es) set forth below.

☒ by transmitting via electronic delivery the attached document(s) to all attorneys of record using the CM/ECF system.

Richard D. Ross
Law Office of Richard D. Ross
2737 37th Ave. SW
Seattle, WA 98126
Richard.d.ross@icloud.com
*Counsel for Defendants*

R. Gale Porter, Jr., admitted *Pro Hac Vice*
Porter Law Group, LLC
1646 W. Snow Ave., Ste. 11
Tampa, FL 33606
gale@porterlawgroup.net
paralegal@porterlawgroup.net
*Counsel for Defendants*

**I declare under penalty of perjury under the laws of the State of Washington that the above is true and correct.**

DATED this 29th day of January, 2021.

GORDON REES SCULLY MANSUKHANI LLP

By: _____
Heather A. Coffey, Legal Assistant

CERTIFICATE OF SERVICE – Page 1

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 382-3855
Facsimile: (503) 616-3600