1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 3M COMPANY,<br><br>    Plaintiff,<br><br>   v.<br><br>AIME LLC; MARK BACIAK; and<br>MICHAEL BINGHAM,<br><br>    Defendants. | C20-1096 RAJ<br><br>ORDER |

THIS MATTER comes before the Court on the Motion to Dismiss Defendants'

Counterclaims, docket no. 23, filed by Plaintiff 3M Company ("3M") and the Motion to

Compel, docket no. 29, filed by Defendants AIME LLC ("AIME"), Mark Baciak, and

Michael Bingham (collectively "Defendants").  Having reviewed all papers filed in

support of, and in opposition to, the motions, the Court enters the following Order.

## Background

3M provides healthcare products and personal protective equipment ("PPE"), including N95 respirator masks ("respirators"). Compl. at ¶ 9 (docket no. 1). On July 15, 2020, 3M filed this lawsuit against Defendants. In the Complaint, 3M alleges that Defendants informed potential customers that they had access to more than 500 million units of 3M products even though they did not have direct access to 3M products. Id. at ¶ 58. 3M further asserts that Defendants attempted to sell 3M respirators at inflated prices of $2.00, $3.00, or $6.95 per respirator, compared to 3M's list price of $1.27 per respirator. Id. at ¶¶ 59–61. According to 3M, Defendants led potential customers to believe that the sale would involve 3M. Id. at ¶ 63. In reality, 3M contends that Defendants were not allowed to make such representations and did not have the right to use 3M's trade name or trademark in their solicitations and marketing materials. Id. at ¶¶ 66–67. 3M asserts claims against Defendants for violations of the Lanham Act, trademark infringement, violations of the Washington Unfair Business Practices Act, and conspiracy. Id. at ¶¶ 78–120.

Defendants filed Counterclaims against 3M on October 9, 2020. Countercls. (docket no. 17). According to Defendants, 3M filed this lawsuit as part of "a multifaceted publicity campaign to control the damage" of the then United States President publicly stating that 3M had placed "profits over patriotism during the global pandemic." Id. at ¶¶ 14–15. Defendants also allege that 3M filed this lawsuit "for the ulterior purpose of driving out competition in the U.S. mask market." Id. at ¶ 19. Defendants assert counterclaims for malicious prosecution, abuse of process, antitrust

1   liability for predatory litigation practices, violations of Washington's Consumer

2   Protection Act ("CPA"), tortious interference with prospective advantage, false light

3   defamation, and defamation by implication.  Id. at ¶¶ 103–52.

4         3M moves to dismiss all Defendants' counterclaims.  Defendants move to compel

5   discovery related to their counterclaims.  The Court addresses each motion in turn.

6   **<u>Discussion</u>**

7   **I.     Standard of Review**

8         A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss

9   a counterclaim is evaluated under the same standards applicable to a motion to dismiss a

10  complaint.  See Lemman v. Foley, No. C20-591, 2020 WL 7181055, at *1 (W.D. Wash.

11  Dec. 7, 2020).  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss

12  need not provide detailed factual allegations, it must offer "more than labels and

13  conclusions" and contain more than a "formulaic recitation of the elements of a cause of

14  action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must

15  indicate more than mere speculation of a right to relief.  Id.  When a complaint fails to

16  adequately state a claim, such deficiency should be "exposed at the point of minimum

17  expenditure of time and money by the parties and the court."  Id. at 558.  A complaint

18  may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii)

19  insufficient facts under a cognizable legal claim.  Robertson v. Dean Witter Reynolds,

20  Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must

21  assume the truth of the plaintiff's allegations and draw all reasonable inferences in the

22  plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The

23

1    question for the Court is whether the facts in the complaint sufficiently state a "plausible"

2    ground for relief.  Twombly, 550 U.S. at 570.  If the Court dismisses the complaint or

3    portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203

4    F.3d 1122, 1130 (9th Cir. 2000).

5    **II.    Malicious Prosecution**

6        3M moves to dismiss Defendants' counterclaim for malicious prosecution.  A party

7    asserting malicious prosecution must establish the following elements:

8          (1) that the prosecution claimed to have been malicious was instituted or
           continued by the defendant; (2) that there was want of probable cause for the
9          institution or continuation of the prosecution; (3) that the proceedings were
           instituted or continued through malice; (4) that the proceedings terminated
10         on the merits in favor of the plaintiff, or were abandoned; and (5) that the
           plaintiff suffered injury or damage as a result of the prosecution.

11   Clark v. Baines, 150 Wn.2d 905, 911, 84 P.3d 245 (2004).  The Legislature has abrogated

12   the fourth element by permitting defendants to assert counterclaims for malicious

13   prosecution under RCW 4.24.350.  Hanson v. Estell, 100 Wn. App. 281, 286, 997 P.2d

14   426 (2000).  Additionally, in Washington, "a malicious prosecution claim arising from a

15   civil action requires the plaintiff to prove the same five elements listed above plus two

16   additional elements:  (6) arrest or seizure of property and (7) special injury (meaning

17   injury which would not necessarily result from similar causes of action)."[1]  Clark, 150

18   Wn.2d at 912.  3M argues that Defendants have not stated sufficient facts to support an

19

20   _____

21   [1] In its Motion to Dismiss, 3M states that a party asserting malicious prosecution must only meet four
     elements and does not address whether Defendants meet the sixth and seventh elements.  Mot. to Dismiss
22   Countercls. at 3 (docket no. 23).

23

1    inference that 3M lacked probable cause, that 3M initiated the action with malice, or that

2    Defendants suffered an injury resulting from the action.

3            **a.  Probable Cause**

4            In their counterclaim for malicious prosecution, Defendants allege that 3M lacked

5    probable cause for this lawsuit because "3M was aware at the time it filed suit against

6    Counterclaim Plaintiffs that they had done nothing more than attempt to purchase, sell or

7    re-sell *genuine* 3M products."  Countercls. at ¶ 105 (docket no. 17).  3M argues that

8    whether Defendants are protected by the "first sale doctrine" is irrelevant because its

9    allegations regarding trademark infringement are more than that Defendants attempted to

10   sell counterfeit products.  Indeed, 3M also asserts that Defendants falsely affiliated

11   themselves with 3M by misrepresenting to customers that they had a close relationship

12   with 3M and that Defendants "created misleading paperwork that misrepresented the

13   purchase process for 3M respirators and falsely claimed that 3M was involved in the

14   transaction."  Compl. at ¶ 5 (docket no. 1).  Additionally, 3M contends that Defendants

15   did not have the right to use its "famous 3M trade name or trademarks in their

16   solicitations and marketing materials."[2]  Id. at ¶ 67.

17

18   _____

19   [2] In their Response, Defendants argue that the Washington Court of Appeals left open the possibility that
     a malicious prosecution claim may be based on a single cause of action.  Resp. at 2 (docket no. 25) (citing
20   Brin v. Stutzman, 89 Wn. App. 809, 819–22, 951 P.2d 291 (1998)).  3M, however, does not argue in its
     Motion to Dismiss that the Court should dismiss the claim for malicious prosecution because Defendants
     base it on a single cause of action.  To the extent 3M raises this argument for the first time in its Reply,
21   the Court does not address it.  Additionally, a fair reading of Defendants' claim for malicious prosecution
     raises the claim with respect to only 3M's claim for trademark infringement.  See Countercls. at ¶¶ 103–
     08.  To the extent Defendants assert that their malicious prosecution claim is based on more than 3M's
22   claim for trademark infringement, it is not adequately pleaded.

23

1       Although 3M alleges more than just trademark infringement through counterfeit

2   products, Defendants' allegation in their counterclaim for malicious prosecution is that

3   3M knew they had "done nothing more than attempt to purchase, sell or re-sell *genuine*

4   3M products."  Countercls. at ¶ 105.  Defendants allege that 3M knew this because they

5   spoke with a 3M agent, cooperated with 3M, and disclosed information to 3M.

6   Countercls. at ¶ 61.  Accepting this allegation as true, and drawing all reasonable

7   inferences from it, it is plausible that 3M knew at the time it filed this lawsuit that

8   Defendants had not committed any of the acts of trademark infringement that 3M alleges.

9   Defendants have adequately pled the probable cause element.

10          **b.  Malice**

11      3M also contends that Defendants fail to adequately plead the malice element

12  because the two facts Defendants point to in their counterclaim, namely that 3M did not

13  send a cease and desist letter before filing its Complaint and that 3M's Complaint is

14  "cookie cutter," do not indicate malice.  Under Federal Rule of Civil Procedure 9(b),

15  "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

16  generally."  Defendants assert that "[t]hese proceedings were instituted or continued

17  through malice, including lack of probable cause and actual malice."  Countercls. at ¶

18  106.  This allegation sufficiently pleads malice.

19          **c.  Injury**

20

21

22

23

1    3M argues that Defendants fail to adequately plead injury because they "make no

2    factual allegations of damages stemming from this action."[3]  Mot. to Dismiss Countercls.

3    at 5 (docket no. 23).  Defendants, however, sufficiently allege injury or damage because

4    of the prosecution.  Specifically, Defendants allege that the "falsity of the claims made in

5    3M's lawsuit and corresponding publicity campaign has caused material harm to the

6    reputations and credibility of AIME executives and personnel."  Countercls. at ¶ 4; see

7    Miller v. Pacific County, 91 Wn.2d 744, 751, 592 P.2d 639 (1979) (Rosellini, J.,

8    concurring) (". . . damages to his reputation, resulting from malicious prosecution, might

9    be recoverable"); Rene v. Meyer, No. 25851-0-II, 2001 WL 703923, at *6 n.21 (Wash.

10   Ct. App. June 22, 2001) (acknowledging reputation damage is actionable for malicious

11   prosecution so long as it is linked to the claim).  Defendants also allege that this lawsuit

12   has damaged their business prospects because their negotiations with a potential customer

13   terminated after 3M informed that customer about this lawsuit.[4]  Countercls. at ¶ 65.

14   Defendants have adequately pleaded injury.  Because the Defendants have adequately

15   pleaded the elements challenged by 3M, the Court DENIES 3M's motion to dismiss

16   Defendants' counterclaim for malicious prosecution.

17

18

19   [3] Since 3M asserts only that Defendants fail to make factual allegations supporting an inference of
     damages and does not make any argument as to whether Defendants adequately plead special damages in
     relation to the seventh element, the Court does not address that element.

20   [4] In its Reply, 3M contends that Defendants' allegations regarding negotiations are too vague and
     speculative to adequately allege damages.  Reply at 13 (docket no. 28) (citing Wilkerson v. Wegner, 58

21   Wn. App. 404, 409, 793 P.2d 983 (1990)).  But Wilkerson stands for the proposition that whether a
     prospective applicant who was denied an opportunity to participate in a contest with subjective judging
     suffered damages is too speculative.  This does not support 3M's argument that Defendants' allegations

22   regarding terminated negotiations and damaged business prospects are too speculative.

23

ORDER - 7

### III.    Abuse of Process

3M moves to dismiss Defendants' counterclaim for abuse of process.  The tort consists of three elements:

> To establish the tort of abuse of process, a claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm proximately caused by the abuse of process.

Bellevue Farm Owners Ass'n. v. Stevens, 198 Wn. App. 464, 477, 394 P.3d 1018 (2017). "A claim for abuse of process requires a showing that legal process was appropriated for an extrinsic end beyond the natural scope of the suit."  Mason v. Mason, No. 51642-0-II, 2021 WL 4859216, at *20, (Wash. Ct. App. Oct. 19, 2021).  Thus, "initiation of a legal proceeding that is baseless and vexatious does not alone amount to abuse of process."  Id.

3M contends that Defendants fail to allege that it used any process for an improper end and instead complain only about the action itself.  This, however, mischaracterizes Defendants' assertions.  In their Counterclaims, Defendants allege that 3M began telling "the world" that Defendants are "some of the most egregious 'bad actors' engaged in 'unlawful actions' so as to warrant this lawsuit and halt their fraud, counterfeiting, and price gouging."  Countercls. at ¶ 94.  Defendants further allege that 3M filing this lawsuit is a tactic "to utilize the litigation process in order to unfairly smother the competition" and "an anticompetitive strategy calculated to eliminate competition and preserve 3M's quasi-monopoly on the respirator market."  Countercls. at ¶¶ 99 & 100.  Through these allegations, Defendants contend that 3M is using the legal process to prevent other companies from competing with it in the respirator market.  This is an extrinsic and

ORDER - 8

1    improper purpose to legal proceedings.  Accordingly, the Court DENIES 3M's motion to

2    dismiss Defendants' counterclaim for abuse of process.[5]

3    **IV.    Antitrust**

4           3M moves to dismiss Defendants' claims under Sections 1 and 2 of the Sherman

5    Act, arguing that 3M has immunity and that Defendants fail to adequately plead all the

6    elements of an antitrust claim.

7           **a.  Immunity**

8           Under the Noerr-Pennington doctrine, those who attempt to influence judicial

9    bodies are immune under the first amendment from antitrust scrutiny.  Energy

10   Conservation, Inc. v. Heliodyne, Inc., 698 F.2d 386, 387 (9th Cir. 1983).  Immunity,

11   however, does not extend to "sham" activities.  Pro. Real Estate Invs., Inc. v. Columbia

12   Pictures Indus., Inc., 508 U.S. 49, 56 (1993).  The sham litigation exception might apply:

13   (1) where the lawsuit is objectively baseless and the party's motive in bringing it was

14   unlawful or (2) where the conduct involves a series of lawsuits brought pursuant to a

15   policy of starting legal proceedings without regard to the merits and for an unlawful

16   purpose.  Sosa v. DIRECTV, Inc., 437 F.3d 923, 938 (9th Cir. 2006).  "The plaintiff has

17   the burden to state factual allegations that show the defendant's conduct falls outside the

18   protection of Noerr-Pennington."  Evans Hotels, LLC v. Unite Here Local 30, 433 F.

19   _____

20   [5] Defendants do not make any allegations relating to injury in the section of their Counterclaims raising
     their abuse of process claim.  Defendants, however, allege elsewhere in their Counterclaims that this
21   lawsuit has required them to retain attorneys and that they have agreed to pay a reasonable fee for their
     services, which constitute sufficient damages for an abuse of process claim.  Countercls. at ¶ 102; see
22   Bellevue Farm Owners Ass'n, 198 Wn. App. at 480 (acknowledging that attorney fees and costs may
     satisfy the damages element of an abuse of process claim).

23

1    Supp. 3d 1130, 1144 (S.D. Cal. 2020).  Additionally, courts apply a heightened pleading

2    standard where, "'in order to state a claim for relief[,] . . . a complaint must include

3    allegations of the specific activities' the defendant engaged in that deprive the

4    defendant's conduct of <u>Noerr-Pennington</u> protection." <u>Id.</u> (quoting <u>Franchise Realty

5    Interstate Corp. v. S.F. Local Joint Exec. Bd.</u>, 542 F.2d 1076, 1082 (9th Cir. 1976)).

6         Defendants adequately plead facts that the <u>Noerr-Pennington</u> doctrine does not

7    protect 3M under the sham litigation exception.  Under the first avenue to establishing the

8    exception applies, the party must plead facts to show that the lawsuit is objectively

9    baseless and the party's motive in binging it was unlawful.  Under this test, courts may

10   only turn to the second element and consider the litigant's subjective motivation if the

11   challenged litigation is objectively baseless.  <u>Pro. Real Estate Invs., Inc.</u>, 508 U.S. at 60.

12        Defendants plead that "3M's lawsuit is objectively baseless in the sense that no

13   reasonable litigant could realistically expect success on the merits."  Countercls. at ¶ 116.

14   To support this allegation, Defendants assert that they spoke with a 3M agent, cooperated

15   with him, and disclosed information to him.  <u>Id.</u> ¶ 61.  Specifically, Defendants allege

16   that they told 3M that, with respect to the deal the 3M agent called about, they had reason

17   to believe the respirators were coming directly from 3M because of representations made

18   to them by an attorney claiming to work with a 3M compliance officer.  <u>Id.</u> at ¶¶ 60 & 61.

19   Defendants additionally plead that 3M had an unlawful motive in bringing its lawsuit

20   because, according to Defendants, this lawsuit is an attempt to interfere directly with the

21

22

23

business relationships of a competitor.[6]  Id. at ¶ 118.  Defendants further allege that 3M is

utilizing litigation as "a weapon to stifle its competition" and has the goals of causing

competitors to incur enormous legal expenses, tying up managerial resources, diverting

customers away from Defendants, and eliminating Defendants from the marketplace.  Id.

at ¶ 119.  Defendants contend that 3M was also motivated to bring this lawsuit as part of

"publicity campaign" to control damage after then President Trump had "called-out" 3M

in the Spring of 2020 for "placing profits over patriotism during the global pandemic."

Id. at ¶¶ 14 & 15.  Defendants have adequately pleaded the sham litigation exception

under the first avenue.

      Defendants also appear to assert that the sham litigation exception under the

second avenue, which applies where the conduct involves a series of lawsuits brought

pursuant to a policy of starting legal proceedings without regard to the merits and for an

unlawful purpose.  Defendants allege that "3M reiterates in this lawsuit a pattern of

baseless, repetitive claims that have also been made by 3M in at least nine other lawsuits

against others, on its website, and in its press releases."  Id. at ¶ 117.

---

[6] 3M argues that Defendants do not adequately allege that Noerr-Pennington immunity does not apply in
this case because they fail to allege that they are competitors with 3M.  Mot. to Dismiss Countercls. at 9–
10.  This is inaccurate.  Defendants allege that "AIME is a competitor of 3M in the PPE market."
Countercls. at ¶ 44.  To support this contention, Defendants state that AIME is a manufacturer, importer,
exporter, and specifications developer of PPE, that "AIME has committed tens of millions of dollars
towards entering the PPE market," and that "AIME expects to offer its masks at prices that are less than
3M's prices."  Id. at ¶¶ 44 & 78.  Defendants also allege that 3M filed this lawsuit after discovering that
AIME was impeding 3M's ability to sell to a mutual customer because AIME previously delivered masks
to the customer and had quoted the customer a lower price for respirators in a second deal.  Id. at ¶¶ 3, 58,
& 59.  Defendants have adequately alleged that AIME and 3M were competitors.

1    But Defendants fail to state facts from which the Court can infer that 3M was

2    improperly motivated in filing the other lawsuits.  The Counterclaims do not contain any

3    facts about who the lawsuits were filed against or what claims were raised.  On the

4    contrary, Defendants cite a paragraph from 3M's website where it claims that, as part of

5    3M's investigation into 4,000 reports of fraud, it "has filed 18 lawsuits in 10 states and

6    Canada" and "has won 6 temporary restraining orders and 4 preliminary injunction

7    orders."  Id. at ¶ 93.  That 3M has filed only 18 lawsuits after receiving over 4,000 reports

8    of fraud and has been successful in the majority of those lawsuits cannot create the

9    inference that 3M was filing lawsuits pursuant to a policy of starting legal proceedings

10    without regard for the merits.  See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. &

11    Constr. Trades Council, AFL-CIO, 31 F.3d 800, 811 (9th Cir. 1994) ("The fact that more

12    than half of all the actions as to which we know the results turn out to have merit cannot

13    be reconciled with the charge that the unions were filing lawsuits and other actions willy-

14    nilly without regard to success.").

15    Because Defendants plead that 3M's lawsuit is objectively baseless in the sense

16    that no reasonable litigant could realistically expect success on the merits, the Court does

17    not dismiss Defendants' antitrust claims based on failure to plead that the conduct falls

18    outside of the Noerr-Pennington doctrine.  The Court will not, however, permit

19    Defendants to pursue the sham litigation exception based on the theory that 3M filed a

20    series of lawsuits pursuant to a policy of starting legal proceedings without regard to the

21    merits and for an unlawful purpose.  Although courts must consider whether to grant

22

23

1  leave to amend, Defendants cannot successfully argue that the sham litigation exception

2  applies based on such a theory given the facts of this case.

3          **b.  Elements of an Antitrust Claim**

4          To state a valid claim under the Sherman Act a plaintiff must allege that the

5  defendant has market power within a "relevant market" and the elements of a Section 1

6  or 2 claim.  Newcal Indus., Inc. v. Ikon Off. Sol., 513 F.3d 1038, 1044 (9th Cir. 2008).

7  3M contends that Defendants fail to adequately allege:  (1) a relevant market or that 3M

8  has market power, (2) all the elements of a Section 1 claim, and (3) certain elements of a

9  Section 2 claim.

10             **i.  Relevant Market and Market Power**

11         To adequately allege the relevant market, a plaintiff "must allege both that a

12  'relevant market' exists and that the defendant has power within that market."  Newcal

13  Indus., Inc., 513 F.3d at 1044.  To plead a relevant market, a plaintiff must allege both a

14  product market and a geographic market.  Id. at 1045 n.4.  Since the market must

15  encompass both the product at issue and economic substitutes for the product, "the

16  relevant market must include 'the group or groups of sellers or producers who have actual

17  or potential ability to deprive each other of significant levels of business.'"  Id. at 1045

18  (quoting Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir.

19  1989)).  Failure to allege a product market consisting of reasonably interchangeable

20  goods renders a claim facially unsustainable.  Golden Gate Pharmacy Servs., Inc. v.

21  Pfizer, Inc., 433 Fed. Appx. 598, 599 (9th Cir. 2011) (citing Newcal Indus. Inc., 513 F.3d

22  at 1045).

23

ORDER - 13

1    Defendants have adequately pleaded the relevant product and geographic market,

2    namely the United States market for N95 respirator masks.  In their Counterclaims,

3    Defendants make several allegations that the relevant market is the United States market.

4    Defendants allege that 3M filed this lawsuit "for the ulterior purpose of driving out

5    competition in the U.S. mask market."  Countercls. at ¶ 19.  Defendants also allege that

6    they "have tried to fill a huge void in the American marketplace for respirators" and that

7    3M "enjoys a quasi-monopoly over the U.S. respirator market."  Id. at ¶¶ 42 & 99.

8    Further, Defendants contend that 3M is "weaponizing the U.S. legal system . . . to

9    monopolize the respirator market."  Id. at ¶ 1.  Defendants also allege that the product is

10   the N95 respirator mask.  Although 3M points to several economic substitutes for N95

11   respirators, see Mot. to Dismiss Countercls. at 12, Defendants have alleged that there are

12   no economic substitutes for N95 respirator masks in the United States market.

13   Specifically, Defendants assert that while other respirators exist that block 95% of

14   airborne particles, the FDA has only approved N95 respirator masks for use in the United

15   States.  Countercls. at ¶ 13.

16   Nevertheless, Defendants have failed to adequately plead the relevant market.

17   When pleading the relevant market, a plaintiff must state the other sellers or producers

18   who have actual or potential ability to deprive each other of significant business.  Newcal

19   Indus., Inc., 513 F.3d at 1045.  In their Counterclaims, Defendants state that "several

20   companies make N95 masks" but do not identify these companies.  Countercls. at ¶ 13.

21   Because Defendants have failed to do so, they do not sufficiently plead the relevant

22

23

1   market and ultimately fail to state a claim for a violation of either Section 1 or 2 of the

2   Sherman Act.

3        Defendants also do not adequately plead that 3M has market power in the United

4   States market for N95 respirator masks.  A party has market power when, "by restricting

5   its own output, it can restrict marketwide output and, hence, increase marketwide prices."

6   Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1434 (9th Cir. 1995).  Market

7   power can be alleged directly or circumstantially.  See id.  To allege market power

8   directly, a plaintiff must show restricted output and supracompetitive prices.  See id.  To

9   allege market power circumstantially, "a plaintiff must:  (1) define the relevant market,

10  (2) show that the defendant owns a dominant share of that market, and (3) show that there

11  are significant barriers to entry and show that existing competitors lack the capacity to

12  increase their output in the short run."  Id.

13       Defendants point to their allegations that 3M has a "near monopoly" or "quasi-

14  monopoly" over the United States respirator market to argue that they adequately plead

15  market power.  See Countercls. at ¶¶ 13, 18, 99, & 100.  Although the elements of

16  antitrust claims need not be pleaded with specificity, see Newcal Indus., Inc., 513 F.3d at

17  1045, these allegations are insufficient to plead market power directly or circumstantially,

18  even if Defendants had adequately pleaded the relevant market.  Without any facts

19  alleging, for example, 3M's market share, 3M's ability to control the price of N95

20

21

22

23

1   respirator masks in the United States market,[7] or that new rivals are barred from entering

2   the market, Defendants' allegations that 3M has "near monopoly" or "quasi-monopoly"

3   power constitute conclusions and are insufficient to state a claim for relief.  See Cost

4   Mgmt. Servs., Inc. v. Wash. Nat. Gas Co., 99 F.3d 937, 950–51 (9th Cir. 1996) (noting

5   that although allegations on market share alone are insufficient to plead market power,

6   plaintiff has also pleaded that defendant could charge "off-tariff prices" that had excluded

7   competition from the market); see also Rick-Mik Enters., Inc. v. Equilon Enters. LLC,

8   532 F.3d 963, 972 (9th Cir. 2008).

9          **ii.  Section 1 Claim**

10          Section 1 of the Sherman Act states that "[e]very contract, combination in the

11   form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the

12   several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  "To

13   establish liability under § 1, a plaintiff must prove (1) the existence of an agreement, and

14   (2) that the agreement was in *unreasonable* restraint of trade."  FTC v. Qualcomm Inc.,

15   969 F.3d 974, 989 (9th Cir. 2020) (quoting Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,

16   836 F.3d 1171, 1178 (9th Cir. 2016)); see also Am. Needle, Inc. v. Nat'l Football League,

17   560 U.S. 183, 190 (2010) ("Section 1 applies only to concerted action that restrains

18   trade.").  The plaintiff also has the burden to show that the challenged restraint has a

19   substantial anticompetitive effect that harms consumers in the relevant market.  FTC, 969

20

21   _____

22   [7] Defendants make some allegations that 3M could contractually control the prices of its masks sold by dealers or retailers that 3M works with, but do not allege that 3M can control the market price of N95 respirators in the United States.  Countercls. at ¶¶ 21–27.

23

ORDER - 16

1   F.3d at 991.  3M asserts that Defendants have failed to allege both the existence of an

2   agreement and injury to competition.

3          With respect to the existence of an agreement, Defendants assert that 3M

4   collaborated with Providence Medical Associates ("Providence"), a mutual customer,

5   regarding this lawsuit.  Countercls. at ¶ 65.  Defendants allege that when putting together

6   a deal with Providence to provide respirators, a conference call took place in which a 3M

7   employee "was either listening in on the conference call or was relayed information

8   directly from the call."[8]  Id. at ¶ 61.  Defendants claim that two minutes after the

9   conference call, they received a call from a person stating he was with the "3M Fraud

10  Department."  Id.  3M then filed this lawsuit based on, in part, Defendants' dealings with

11  Providence.  At this early stage in the litigation, Defendants have pleaded the necessary

12  factual allegations regarding the existence of an agreement to overcome a motion to

13  dismiss.

14         Defendants do not address 3M's argument that they fail to allege injury to

15  competition.  Additionally, there are not any allegations in the Counterclaims that assert

16  that an agreement between 3M and Providence had a substantial anticompetitive effect

17  that harms consumers in the relevant market.  For this reason, Defendants have failed to

18  plead a Section 1 claim.

19  ───────────────

20  [8] Defendants also cite their allegation that 3M states on its website that it works with law enforcement to
    combat fraud.  See Countercls. at ¶ 93.  But working with law enforcement to combat fraud does not
21  allege the type of agreement the Sherman Act is concerned with.  Indeed, Defendants also allege that
    AIME works with law enforcement to combat fraud.  Id. at ¶ 48.

22

23

1

### iii.  Section 2 Monopoly Claim

Section 2 of the Sherman Act targets independent anticompetitive conduct.  FTC,
969 F.3d at 989–90.  "To establish liability under § 2, a plaintiff must show:  '(a) the
possession of monopoly power in the relevant market; (b) the willful acquisition or
maintenance of that power; and (c) causal antitrust injury.'"  Id. at 990 (quoting Somers
v. Apple, Inc., 729 F.3d 953, 963 (9th Cir. 2013)).  "Monopoly power is 'the power to
control prices or exclude competition.'"  Image Tech. Servs., Inc. v. Eastman Kodak Co.,
125 F.3d 1195, 1202 (9th Cir. 1997) (quoting United States v. Grinnell Corp., 384 U.S.
563, 571 (1966)).

As previously discussed, Defendants have failed to adequately plead that 3M has
market power in the relevant market.  For the same reasons Defendants failed to
adequately allege market power, they have also failed to adequately allege monopoly
power.  Defendants' conclusory statements that 3M has a "near monopoly" or "quasi-
monopoly" without any supporting factual allegations is insufficient.  Furthermore,
Defendants' allegations that 3M can control the price of the respirators that 3M sells does
not demonstrate that 3M has control over the market price.  As such, Defendants have
failed to plead a Section 2 monopoly claim.

### iv.  Section 2 Attempted Monopolization Claim

Section 2 of the Sherman Act also prohibits attempts to monopolize any part of
trade or commerce.  15 U.S.C. § 2.  "To demonstrate attempted monopolization a
plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive
conduct with (2) a specific intent to monopolize and (3) a dangerous probability of

1  achieving monopoly power." <u>Cascade Health Sols. v. PeaceHealth</u>, 515 F.3d 883, 893

2  (9th Cir. 2008) (quoting <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 456 (1993)).

3  3M argues that Defendants have not alleged the third element.  "In order to determine

4  whether there is a dangerous probability of monopolization, courts have found it

5  necessary to consider the relevant market and the defendant's ability to lessen or destroy

6  competition in that market." <u>Spectrum Sports, Inc.</u>, 506 U.S. at 456.  Additionally, a

7  dangerous probability of achieving monopoly power cannot exist without barriers to new

8  entry or expansion.  <u>Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and</u>

9  <u>Pro. Publ'n</u>, 108 F.3d 1147, 1154 (9th Cir. 1997).

10          Defendants' failure to adequately plead the relevant market dooms its ability to

11  allege that 3M had a dangerous probability of achieving market power.  Furthermore,

12  Defendants do not make any allegations regarding 3M's ability to lessen or destroy

13  competition in the United States market for respirators or barriers to new entry or

14  expansion.  Again, Defendants' bare conclusions that 3M has a monopoly are

15  insufficient.  <u>See</u> <u>Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC</u>, 404 F. Supp. 2d

16  1214, 1224 (E.D. Cal. 2005).  Because Defendants fail to allege facts from which the

17  Court can infer that 3M's conduct created a dangerous probability of it achieving market

18  power, Defendants do not state a Section 2 attempted monopolization claim.  <u>See</u> <u>id.</u>

19          Defendants fail to adequately plead the relevant market, 3M's market power, and

20  certain elements of a Section 1 claim, a Section 2 claim for monopolization, and a

21  Section 2 claim for attempted monopolization.  It appears, however, that the pleading

22  could be cured with additional facts.  <u>See</u> <u>Lopez</u>, 203 F.3d at 1127.  Accordingly, the

23

1 Court GRANTS 3M's motion to dismiss Defendants' claims under Section 1 and 2 of the

2 Sherman Act and DISMISSES those claims without prejudice and with leave to amend.

3 **V.    Consumer Protection Act**

4        3M seeks to dismiss Defendants' CPA counterclaim.  The CPA makes unlawful

5 "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct

6 of any trade or commerce."  RCW 19.86.020.  "To prevail in a private CPA claim, the

7 plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or

8 commerce, (3) affecting the public interest, (4) injury to a person's business or property,

9 and (5) causation."  Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885

10 (2009) (citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784,

11 719 P.2d 531 (1986)).  3M argues that Defendants' allegation that "3M's unfair and

12 deceptive acts impact the public interest," Counterclaims at ¶ 124, is too conclusory to

13 sufficiently plead the public interest element.  To adequately plead the public interest

14 element, a party must state facts that could establish a likelihood that additional

15 individuals have been or will be injured in the same fashion.  Michael v. Mosquera-Lacy,

16 165 Wn.2d 595, 604–05, 200 P.3d 695 (2009).

17        Defendants state that its Counterclaims include "102 paragraphs of allegations

18 tending to show that the 27 lawsuits against AIME and other 3M competitors in the mask

19 market stifles competition and therefore harms the public."  Resp. at 16.  Defendants'

20 argument misses the mark.  To state a CPA claim, a party must allege *that others are*

21 *likely to be injured in the same fashion*.  Defendants contend that the "falsity of the

22 claims made in 3M's lawsuit and corresponding publicity campaign has caused material

23

1    harm to the reputations and credibility of AIME executives and personnel."  Countercls.

2    at ¶ 4.  Thus, Defendants must allege that others are likely to have their reputations and

3    credibility harmed by 3M filing a lawsuit against it to satisfy the element.  This type of

4    harm, however, is not redressable under the CPA.  See J & J Sports Prods., Inc. v.

5    BrewBakers, Inc., No. C18-518, 2019 WL 2191873, at *4 (W.D. Wash. May 21, 2019)

6    (stating that under the "litigation privilege" a CPA claim cannot be based on the

7    argument that, by filing a lawsuit that misrepresents what actually happened, the other

8    party is deceiving the public into believing the defendant is a lawbreaker).

9         A CPA claim, however, may be based on the argument that a party routinely files

10   lawsuits as part of its business.  See id. (citing Allstate Ins. Co. v. Tacoma Therapy, Inc.,

11   No. 13-cv-05214, 2014 WL 1494100, at *5 (W.D. Wash. Apr. 16, 2014)).  Defendants

12   have alleged that 3M, in an attempt to drive out competition, files predatory lawsuits

13   against its competitors.  Countercls. at ¶¶ 18, 19, 64, 65, 99, & 100.  According to

14   Defendants, 3M implemented a publicity campaign in which 3M claimed it would

15   "aggressively prosecute civil lawsuits to snuff-out price gauging and counterfeiting in the

16   pandemic marketplace" and that 3M chose to target these lawsuits at "the little guys of

17   the marketplace who 3M believed would be no match against 3M's virtually unlimited

18   resources."  Id. at ¶¶ 39 & 41.  Defendants assert that 3M had, at the time of its

19   Counterclaims, filed 18 lawsuits in 10 states and Canada.  Id. at ¶ 93.

20        These claims adequately allege the public interest element of Defendants' CPA

21   claim.  Accepting all of Defendants' allegations as true, 3M has a business practice of

22   filing lawsuits against its competitors to drive out competition.  That 3M had filed over a

23

ORDER - 21

1   dozen of such lawsuits demonstrates that other competitors "are not only *likely* to be

2   injured in the same manner, but *have* experienced such injury." Cruson v. A.A.A.A.,

3   Inc., No. 58163-5-I, 2007 WL 2363475, at *8 (Aug. 20, 2007). The Court concludes that

4   Defendants have sufficiently pleaded the public interest element. Accordingly, the Court

5   DENIES 3M's motion to dismiss the CPA claim.[9]

6   **VI.    Tortious Interference with Prospective Economic Advantage**

7          3M contends that the Court should dismiss Defendants' tortious interference claim

8   for failure to establish any of the required elements except for element three.[10]

9   Washington courts require a plaintiff to establish five elements to state a claim for

10   tortious interference:

11          A plaintiff must prove five elements to establish a prima face case of tortious
       interference with a business expectancy. Specifically, a plaintiff must show
12          (1) the existence of a valid business expectancy; (2) that the defendant had
       knowledge of that expectancy;  (3) an intentional  interference inducing or
13          causing termination of the expectancy; (4) that the defendant interfered for
       an improper purpose or used improper means; and (5) resultant damage.
14
   Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 767–68, 436 P.3d 397
15
   (2019) (internal citations omitted).
16
          **a.  Existence of a Valid Business Expectancy**
17

18   ───────────────

19   [9] 3M asserts that the Defendants' CPA claim also fails for the same reason as their Sherman Act claims.
   Courts construing RCW 19.86.030 and .040 are guided by decisions involving comparable federal
   statutes. Top Notch Sols., Inc. v. Crouse and Assocs. Ins. Brokers, Inc., No. C17-827, 2017 WL
20   5158525, at *4 (W.D. Wash. Nov. 7, 2017). 3M, however, challenges only one element of Defendants'
   CPA claim, which fails. Without more, the Court will not dismiss the CPA claim solely because it
   dismisses the Sherman Act claims.

21   [10] Although 3M asserts that "Defendants have not pleaded facts supporting any of the elements," they do
   not make any argument relating to the third element. Mot. to Dismiss Countercls. at 18–20. Thus, the
22   Court treats 3M's Motion as challenging only the first, second, fourth, and fifth elements.

23

ORDER - 22

Case 2:20-cv-01096-RAJ   Document 34   Filed 12/08/21   Page 23 of 29

Defendants allege that they are in the business of selling respirators and have the United States Department of Defense, the Governments of Canada, Mexico, South Africa, Hong Kong, and the United Kingdom, many state governments, hospitals, and other medical facilities as their prospective customers.  Countercls. at ¶ 127.  Defendants also discuss their deal to provide Providence with 4.75 million masks.  Id. at ¶¶ 58 & 59.  Defendants further contend that they have a small facility in Dade City, Florida that they use to produce respirators.  Id. at ¶ 17.  Through these allegations, Defendants have pleaded that they had prospective business relationships that would be of pecuniary value.  See Greensun Grp., LLC, 7 Wn. App. 2d at 768 (noting that "a 'valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value'") (quoting Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp. Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002)).  Defendants have sufficiently pleaded the first element.

**b.  Defendant had Knowledge of the Expectancy**

To allege the knowledge element, a plaintiff must state that the defendant knew of facts giving rise to the presence of some business expectancy.  Greensun Grp. LLC, 7 Wn. App. 2d at 771.  Regarding Defendants potential deal with Providence, Defendants contend that a 3M employee knew about the potential deal and then called Defendants and discussed with them the details of that potential deal.  Countercls. at ¶ 61.  As to the other transactions, however, Defendants allege only that 3M "became aware of [its] negotiations."  Id. at 129.  This allegation is too conclusory and does not sufficiently state that 3M had any awareness of Defendants' business arrangements with any government

1   entities or hospitals or medical providers other than Providence.  Accordingly,

2   Defendants sufficiently allege the second element regarding its business expectancy

3   related to Providence only.

4        **c.  Improper Means**

5        As to the third element, "[t]ortious interference through improper means 'arises

6   from the defendant's use of wrongful means that in fact cause injury to the plaintiff's

7   contractual or business relationships.'"  <u>Greensun Grp., LLC</u>, 7 Wn. App. 2d at 773.  3M

8   argues that intentional interference through making false statements to potential

9   customers must satisfy Rule 9(b)'s heightened pleading requirement.  Mot. to Dismiss

10  Countercls. at 19.  Even accepting 3M's argument that Defendants must plead this

11  element in satisfaction of Rule 9(b), Defendants adequately plead improper means

12  through fraudulent conduct.

13       According to Defendants, 3M makes postings on its websites that imply they are

14  guilty of fraud, counterfeiting, and price gouging.  Countercls. at ¶ 94.  Defendants

15  contend that the allegations on 3M's website are "telling the world" that they are "'bad

16  actors' engaged in 'unlawful actions.'"  <u>Id.</u>  Further, Defendants assert that a 3M

17  employee was listening in on or told details about a conference call between Defendants

18  and Providence.  <u>Id.</u> at ¶ 61.  During that call, Defendants contend that the 3M employee

19  stated that the deals AIME was working on were fraudulent.  <u>Id.</u>  Defendants allege that

20  3M then collaborated with Providence on this lawsuit.  <u>Id.</u> at ¶ 65.  These allegations

21  provide the specifics of Defendants' contention that 3M interfered with its business with

22  Providence by making false statements about them.  Thus, even assuming that Rule

23

1   9(b)'s heightened pleading standard applies, Defendants have adequately pleaded

2   improper means.

3       **d.  Damages**

4       Turning to damages, 3M challenges this element on the basis that Defendants have

5   not alleged facts supporting an inference that they could have entered into profitable

6   contracts with any other party.  On the contrary, Defendants contend that they have a

7   facility in Florida that is producing respirators.  Id. at ¶ 17.  Defendants also state that

8   they had had a successful deal with Providence and were on the verge of closing a second

9   deal.  Countercls. at ¶¶ 58–60.  Defendants argue that 3M's interference caused the

10  second deal with Providence to fall apart and that its relationship with Providence has

11  suffered.  Id. at ¶ 65.  At this stage in the litigation, these allegations are sufficient to

12  survive a motion to dismiss.  The Court DENIES 3M's motion to dismiss Defendants'

13  tortious interference claim.[11]

14  **VII.    False Light and Defamation by Implication**

15      3M asserts four reasons why the Court should dismiss Defendant's claims for false

16  light and defamation by implication:  (1) Defendants have failed to comply with a

17  condition precedent, (2) 3M's communications are absolutely privileged, (3) Defendants

18  have not established the juxtaposition of the statements they rely on, and (4) Washington

19

20  [11] 3M also asserts that only AIME, and not Baciack and Bingham, can assert a claim for tortious
    interference.  But to support this proposition, 3M cites only non-binding case law that does not analyze
21  Washington law.  Mot. to Dismiss Countercls. at 18 (citing cases analyzing tortious interference claims
    under Virginia law).  Since, 3M does not point to any authority that Washington law does not permit
22  individuals to bring tortious interference claims, the Court does not dismiss this claim to the extent it is
    asserted by Baciack and Bingham.

23

1  does not recognize defamation by implication claims based on juxtaposition.  Because the

2  Court determines that 3M's statements are privileged, the Court DISMISSES this claim

3  with prejudice and does not address 3M's additional arguments.

4    "Defamation and invasion of privacy by false light are similar, yet distinct, causes

5  of action."  Seaquist v. Caldier, 8 Wn. App. 2d 556, 564, 438 P.3d 606 (2019).  While

6  both causes of action rely on the disclosure of misleading information, "they require

7  different elements and allow for recovery of different damages."  Id.  To show

8  defamation, a plaintiff must prove falsity, an unprivileged communication, fault, and

9  damages.  Id.  To prove invasion of privacy by false light, a plaintiff must demonstrate

10  that the defendant published statements that placed plaintiff in a false light and that (1)

11  the false light would be highly offensive and (2) the defendant knew of or recklessly

12  disregarded the falsity of the publication and the subsequent false light it placed the

13  plaintiff in.  Id.

14    **a.  Absolute Privilege**

15    "[I]n the defamation context, 'allegedly libelous statements, spoken or written by a

16  party or counsel in the course of a judicial proceeding, are absolutely privileged if they

17  are pertinent or material to the redress or relief sought.'"  Mason, 2021 WL 4859216, at

18  **12 (emphasis removed) (quoting McNeal v. Allen, 95 Wn.2d 265, 267, 621 P.2d 1285

19  (1980)).  For a statement to be pertinent, it need only have some relation to the judicial

20  proceedings and any bearing upon the subject matter of the litigation.  Demopolis v.

21  Peoples Nat'l Bank of Wash., 59 Wn. App. 105, 110, 796 P.2d 426 (1990).  The litigation

22  privilege can also preclude liability arising from out-of-court conduct related to a lawsuit.

23

ORDER - 26

1   <u>Mason</u>, 2021 WL 4859216, at **13 (citing <u>Bruce v. Byrne-Stevens & Assocs. Eng'rs,</u>

2   <u>Inc.</u>, 113 Wn.2d 123, 136–37, 776 P.2d 666 (1989) & <u>Jeckle v. Crotty</u>, 120 Wn. App.

3   374, 386, 85 P.3d 931 (2004)).

4           Defendants argue that the statements 3M made on its website that the people it is

5   suing have committed fraud and counterfeiting and are engaged in price gouging are

6   defamatory.  Although the statements on 3M's website do not mention Defendants,

7   Defendants contend that they are defamatory when juxtaposed with the lawsuit 3M filed

8   against them.  These statements, however, are absolutely privileged.  Any statement made

9   in 3M's complaint was made during a judicial proceeding and, as it forms the basis of the

10  lawsuit, was material to the relief sought.  Similarly, the statements on 3M's website refer

11  to the allegations 3M made in its various complaints and relate to 3M's efforts to combat

12  fraud.  Because these statements on 3M's websites are about its litigation efforts they also

13  relate to this lawsuit and bear upon the subject matter of this litigation.  Since the

14  statements that are the basis of Defendants' false light and defamation claims are

15  absolutely privileged, any amendment would be futile.  The Court GRANTS 3M's

16  motion to dismiss Defendants' claims for false light and defamation and DISMISSES

17  those claims with prejudice and without leave to amend.

18  **VIII.    Motion to Compel**

19          Defendants move to compel 3M to produce documents responsive to their First

20  Request for Production of Documents ("First Request").  Mot. to Compel at 3 (docket no.

21  29).  Defendants assert that the First Request seeks 82 categories of documents that all

22  relate to allegations Defendants made in their Counterclaims.  <u>Id.</u>  According to

23

1    Defendants, 3M refuses to produce discovery related to Defendants' Counterclaims while

2    3M's motion to dismiss is pending.  Id.  Defendants, however, did not provide the Court

3    with a copy of the First Request or 3M's responses.[12]  Without this, the Court cannot

4    confirm what documents the First Request seeks or the sufficiency of 3M's responses.

5    For this reason, Defendants fail to state with particularity the grounds for a court order

6    and the relief sought.  See Fed. R. Civ. P. 7(b)(1).

7         3M objects to the motion to compel and argues that it appropriately responded to

8    and/or objected to each request.  Compel Resp. at 4 (docket no. 30).  3M asserts that

9    while it "believes that it should not be required to produce documents which relate solely

10   to the counterclaims," it did not cite the Motion to Dismiss as a basis for refusing to

11   produce documents.  Id. at 5.  Again, without the First Request or 3M's responses, the

12   Court cannot evaluate the accuracy of 3M's assertion.  Because the Court does not have

13   the information it needs to resolve the Motion to Compel, the Court DENIES that motion.

14   **Conclusion**

15        For the foregoing reasons, the Court ORDERS:

16        (1)    3M's Motion to Dismiss Defendants' Counterclaims, docket no. 23, is

17   GRANTED in part and DENIED in part as follows:

18             (a)    Defendants' counterclaims under Section 1 and 2 of the Sherman

19   Act are DISMISSED without prejudice and with leave to amend;

20

21   _____

22   [12] Defendants also failed to submit a proposed order or a reply brief.

23

ORDER - 28

1              (b)      Defendants' counterclaims for false light and defamation by

2     implication are DISMISSED with prejudice and without leave to amend;

3              (c)      3M's motion is otherwise DENIED.  Defendants shall file any

4     amended counterclaims by December 22, 2021.

5          (2)      Defendants' Motion to Compel, docket no. 29, is DENIED.

6          (3)      The Clerk is directed to send a copy of this Order to all counsel of record.

7     IT IS SO ORDERED.

8     Dated this 8th day of December, 2021.

9

10    _____

11    The Honorable Richard A. Jones
      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23