THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3M COMPANY,

                    Plaintiff,

     v.

AIME LLC, *et al.*,

                   Defendants.

CASE NO. C20-1096-JCC

ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgement (Dkt. No. 77), and Defendants' objections to the orders of the Honorable Brian A. Tsuchida, United States Magistrate Judge. (Dkt. Nos. 112, 122, 125.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiff's motion (Dkt. No. 77) and OVERRULES and/or strikes as moot Defendants' objections (Dkt. Nos. 112, 122, 125) for the reasons explained herein.

## I.   BACKGROUND

According to its motion for summary judgment, Plaintiff 3M Company is a leading manufacturer of N95 respirators and personal protective equipment ("PPE") that shields users from exposure to airborne particulars, including viruses like COVID-19. (Dkt. No. 77 at 7–8.) During the COVID-19 pandemic, there was an increased demand for Plaintiff's products because they provided high levels of protection compared to many competitors. (*Id*. at 8.) Due to the

1 | increased demand, and the general market frenzy that ensued during the early days of the
2 | pandemic, Plaintiff undertook efforts to combat trademark counterfeiting, trademark
3 | infringement, and other unlawful activities during the COVID-19 pandemic, including (1)
4 | posting "on 3M's website the per respirator, single case list price in the United States for the
5 | most common models of its N95 respirators so that the public can identify and avoid inflated
6 | pricing"; and (2) "[c]reating a website and telephone fraud hotlines in the United States for the
7 | public to use to report suspected fraud, price-gouging, counterfeiting, and ensur[ing] products are
8 | from 3M authorized distributors." (*Id*. at 9–10.)

9 |     Defendants formed AIME LLC ("AIME") in February 2020, one month prior to the
10 | outbreak of the COVID-19 pandemic. (*Id*. at 10.) In the ensuing months, Defendants began
11 | communicating with hospitals and government entities across North America with offers to sell
12 | PPE. (*Id*.) Simultaneously, Defendants contacted third parties to try and source Plaintiff's highly
13 | sought-after PPE products. (*Id*.) Despite never actually purchasing any of Plaintiff's N95s or
14 | other PPE, (*id*.), Defendants represented to multiple potential clients that Defendants could
15 | provide millions of 3M respirators. (*Id*. at 11.) At one point, they claimed to have acquired
16 | 25,000,000 3M masks, a claim belied by the fact that not even Plaintiff, the manufacturer of
17 | these masks, was in possession of such a high quantity of masks. (*Id*.) Defendants offered these
18 | products to potential clients at a rate above 3M's listed price. (*Id*.) When potential clients
19 | expressed disbelief at Defendants ability to source such a large quantity of 3M masks,
20 | Defendants doubled down on their claims, alleging that they were in contact with a third party
21 | who was negotiating a contract with Plaintiffs. (*Id*.)

22 |     Defendants provided a healthcare company with a list of proposed transaction steps that
23 | explicitly included 3M's alleged participation. (*Id*. at 12.) Defendants sent these steps to potential
24 | clients with a document containing both 3M's logo and Defendants own letterhead. (*Id*.)
25 | Defendants claimed that 3M would be in direct contact with potential clients. (*Id*.) Plaintiff never
26 | approved the use of their logo, trademark, or name in these negotiations. (*Id*.) Nonetheless,

Defendants sent the document that contained 3M's marks to several potential customers, despite

admitting that they never had any 3M product in their possession, and that they never had contact

with an actual 3M employee. (*Id*. at 13.) These actions were not an isolated incident. (*Id*. at 14–

15.)

As a result of these actions, Plaintiff brought claims for trademark counterfeiting,

infringement, dilution, unfair competition, false endorsement, false delineation of origin, and

false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)) (herein after "Lanham

Act."). (*See generally* Dkt. No. 1.) Defendants filed a counterclaim, alleging several different

charges. (*See generally* Dkt. No. 17.) The Court previously dismissed three counterclaims,

leaving only counts for malicious prosecution, abuse of process, tortious interference with

economic advantage, and claims under the Washington Consumer Protection Act. (*See generally*

Dkt. No. 34.)

## II.    DISCUSSION

### A.    Objections to Judge Tsuchida's Orders

#### 1.    Discovery Sanctions

On February 13, 2023, Judge Tsuchida granted Plaintiff's motion for discovery sanctions.

(Dkt. No. 103.) Judge Tsuchida found that Defendants violated and abused the Court's orders

and discovery process in a "repeated, intentional, and egregious" fashion. (*Id*. at 1.) Accordingly,

Judge Tsuchida ruled that Defendants are "precluded from presenting or relying on evidence

produced after the November 23, 2022 discovery deadline, and 3M is entitled to an adverse

inference against defendants related to any responses and materials that were not produced prior

to the discovery deadline." (*Id*. at 1–2.) Additionally, Judge Tsuchida ordered Defendants'

attorneys R. Gale Porter and Richard R. Ross to pay monetary sanctions for the costs and fees

incurred by Plaintiff in bringing the discovery motion. (*Id*. at 8.)

Defendants filed a motion for reconsideration pursuant to LCR 7(h). (Dkt. No. 108.)

Judge Tsuchida denied the motion on the grounds that Defendants, "failed to demonstrate

manifest error in the Discovery Sanctions Order or new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." (Dkt. No. 118 at 2.)[1] Defendants subsequently filed objections to Judge Tsuchida's orders imposing discovery sanctions. (Dkt. Nos. 112, 122.) Such objections are reviewed under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).

The Court concludes that Judge Tsuchida's discovery orders were not clearly erroneous because he cites to the specific facts that demonstrates Defendants' improper conduct during the discovery process, (Dkt. Nos. 103 at 3–9; 118 at 3–5); and the orders are not contrary to law because he correctly applied the controlling legal standards to Defendants' claims. (*See id.*) For those reasons, the Court OVERRULES Defendants' objections (Dkt. Nos. 112, 122.)

## 2.  Motion to Withdraw

On February 9, 2023, Judge Brian Tsuchida denied Defendants' motions to withdraw with leave to renew the motions, if necessary, after the assigned district court judge resolved the pending summary judgement motion. (*See generally* Dkt. No. 102.) Defendants objected to the order, arguing that it was erroneous and contrary to law. (Dkt. No. 125.) Given the Court's disposition of this matter in the present order, *see infra* Part II.B., the objections are DENIED as moot. None of the information at issue in the motions to withdraw impacted the Court's holding below.

## B.  Summary Judgement

### 1.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most

---

[1] Although he denied the motion, Judge Tsuchida struck statements from his previous order related to the possible spoliation of evidence. (Dkt. No. 118 at 1.)

favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Regarding the contents of the record on summary judgment, the Court "need only consider *the cited materials*." Fed. R. Civ. P. 56(c)(3) (emphasis added). It does not have "to comb through the record to find some reason to deny a motion for summary judgment." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009). Nor may the nonmovant stand on allegations in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). In addition, conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Also, the facts relied on must be admissible under rules governing admission of evidence generally. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). And finally, affidavits or declarations supporting or opposing summary judgment must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

### 2. Defendants' Counterclaims

#### a. Damages

Proof of damages is relevant to virtually all of Defendants' counterclaims. (Dkt. No. 17 at 21–24.) As Plaintiff indicates, Defendants have failed to provide "any evidence of damages resulting from their alleged claims other than vague and unsubstantiated statements." (Dkt. No.

1  77 at 26.)[2] There is no proof "Defendants ever actually had product to sell, or that their cost to

2  manufacture the product would have allowed them to make a profitable sale to any prospects."

3  (*Id.*) Defendants' response, in its entirety, is: "See Bingham declaration and attached answers to

4  interrogatories that affirm they genuinely suffered financial loss. Moreover, damage to reputation

5  can also be inferred." (Dkt. No. 89 at 5.)

6       While brevity is appreciated by the Court, the Court will not "comb through the record"

7  to affirm Defendants' damages claim. *Gordon,* 575 F.3d 1058. The cite to "Bingham's

8  declaration," without reference to paragraph, page, or exhibit number, does not demonstrate

9  financial loss. For good measure, the Court reviewed the declaration in its entirety, and found

10  that it lacks any admissible evidence to support damages. (*See generally* Dkt. No. 90.) Instead, it

11  is replete with inadmissible self-serving assertions. *See Lujan,* 497 U.S. at 888–89. And the one

12  statement asserting damages references the interrogatories that were produced after the

13  November 23, 2022, discovery deadline. (Dkt. No. 89 at 5.) Per the Court's previous order, (*see*

14  *supra* Part II.A.1), these interrogatories will not be considered. Accordingly, the Court finds that

15  an essential element of Defendants' counterclaims is missing. Nonetheless, the Court will discuss

16  the merits of each individual counterclaim below.[3]

17                *b.  Malicious Prosecution*

18       Defendants assert a counterclaim for malicious prosecution. (Dkt. No. 17 at 21.) "Actions

19  for malicious prosecution are not favored in the law[.]" *Clark v. Baines*, 84 P.3d 245, 248 (2004).

20

21       [2] When the nonmoving party bears the burden of proof, the movant "can prevail merely
by pointing out that there is an absence of evidence to support the nonmoving party's case."

22  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When this occurs, the non-
moving party must provide "specific facts showing that there is a genuine issue for trial."

23  *Anderson,* 477 U.S. at 250.

24       [3] In Defendants response brief, they make repeated conclusory assertions unsupported by
facts on the record and/or they rely on inadmissible evidence. The Court reminds Defendants

25  that, in a ruling on a motion for summary judgment, it may only consider admissible evidence.
*Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002); Fed. R. Civ. P. 56(c)(2).

26

To survive summary judgment, Defendants must put forth evidence to show that Plaintiff (1) did not have probable cause; (2) initiated this action with malice; and that (3) Defendants were injured from this action. (*Id*.) In order to establish malice, Defendants must provide evidence that Plaintiff engaged in affirmative acts demonstrating "improper or wrongful motives or [a] reckless disregard." *Turngren v. King County*, 705 P.2d 258, 266 (Wash. 1985). Because this is a civil action, Defendants must also put forth evidence demonstrating, "arrest or seizure of property" and "special injury (meaning injury which would not necessarily result from similar causes of action)." *Clark*, 84 P.3d at 249.

Defendants concede "there was no arrest" of property, but they claim that "the loss of their business interest and property in not being able to sell their goods as well as damage to reputation would apply to show lost property interests and suffered special injury." (Dkt. No. 89 at 3.) As explained above in the discussion on damages, Defendants provide *no* material to support this claim. Therefore, this conclusory statement, absent additional evidence, will not be considered by the Court. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Defendants rely on similarly unsupported conclusory statements to argue that a question of fact exists whether Plaintiff had probable cause and/or acted with malice. (Dkt. No. 77 at 3–4.) Simply saying "[t]here was no basis for the claims of fraud as [Plaintiff] asserted in its complaint and they knew it" does not make it so. (*Id*.) The single citation to the record, "See Bingham declaration [sic]" does not adequately support this claim, and as the Court previously explained, uncorroborated, self-serving testimony does not create a factual dispute precluding summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

Accordingly, there is insufficient evidence to establish a genuine issue of material fact for Defendants' malicious prosecution claim. Therefore, the Court GRANTS summary judgment to Plaintiff on Defendants' malicious prosecution claim.

### c.   Abuse of Process

Defendants next assert a counterclaim for abuse of process. (Dkt. No. 17 at 22.) To succeed on such a claim, the moving party must prove: (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1019 (Wash. Ct. App. 2017). The mere act of filing a lawsuit with a malicious motive is not sufficient to make out a claim for abuse of process. *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 221 (Wash. 1985). "[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Batten v. Abrams*, 626 P.2d 984, 990 (Wash. Ct. App. 1981).

Defendants support their abuse of process claim with, "the same foregoing reasons and facts" as their malicious prosecution claim. (Dkt. No. 89 at 4.) That is to say, there is once again no facts to support Plaintiffs claim. In fact, there's even less factual support for Defendants' assertions here, because there is no citation to the factual record at all, let alone an unsupported one. (*Id*.) In short, Defendants have not identified, much less supported with admissible evidence, any facts that show a genuine dispute whether Plaintiff undertook this action with an ulterior purpose; whether it committed any improper acts during the prosecution of the lawsuit; or whether Defendants were harmed as a result of Plaintiff's litigation conduct. (*Id*.) Therefore, the Court GRANTS summary judgment to Plaintiff on Defendants' abuse of process claim.

### d.   Consumer Protection Act Claim

Defendants also assert a counterclaim for violation of Washington's Consumer Protection Act ("CPA"). (Dkt. No. 17 at 24.) To state a claim under the CPA, a moving party must demonstrate (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Defendants' CPA claims fail because there is no evidence to satisfy any of the *Hangman*

*Ridge* requirements. Defendants once again reiterate their unsupported conclusions, asking the Court to consider their "belief" as evidence of disputed fact. (Dkt. No. 89 at 4.) The Court cannot do so. *See Hernandez*, 343 F.3d at 1112. Therefore, the Court GRANTS summary judgment to Plaintiff on Defendants' Consumer Protection Act claim.

> e.   *Tortious Interference with Prospective Economic Advantage*

Finally, Defendants assert a counterclaim for tortious interference with prospective economic advantage (Dkt. No. 17 at 24.) To plead tortious interference, a plaintiff must show: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

Defendants once again ask the Court to presume the truth of their assertions based on mere belief and conjecture. (Dkt. No. 89 at 4.) Moreover, Defendants concede to an essential element of the counterclaim: "AIME agrees there was no reasonable business expectation." (*Id.* at 5.) Without such an allegation, Defendants cannot state a claim for tortious interference. *See Leingang*, 930 P.2d at 300. Therefore, the Court GRANTS summary judgment to Plaintiff on Defendants' tortious interference with prospective economic advantage claim.

> 3.   Plaintiff's Claims

> a.   *Trademark Infringement and use of Counterfeit Marks*

Plaintiff asserts a claim for trademark infringement under the Lanham Act. (Dkt. No. 77 at 27.) Such a claim may be based on the use of a trademark that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of one person with another person. *See Suarez Corp. Industries v. Earthwise Techs., Inc.*, 636 F. Supp. 2d 1139, 1145 (W.D. Wash. 2008); 15 U.S.C. §§ 1114. "A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the

alleged infringer's imitating mark is similar enough to cause confusion, or to cause mistake, or to deceive." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).

It is undisputed that Plaintiff's logo is a protected trademark. (Dkt. No. 77 at 27.) Based on the evidence before the court, it is beyond reasonable dispute that Defendants used Plaintiff's name and logo, recognizable symbols associated with the Plaintiff, in connection with offers to sell goods, namely 3M N95 respirators, that they did not have (*Id*. at 11, 13). Defendants admitted they sent a document containing Plaintiff's trademark to potential customers.[4] (Dkt. Nos. 78-1 at 2, 78-12.)  Now, they attempt to claw this admission back with new proffered evidence. (Dkt. No. 89 at 5.) The Court will not allow Defendants to circumnavigate the discovery process—and the Court's previous orders. Therefore, the Court will consider the admission that Defendants sent a document containing Plaintiff's trademark as fact. *Conlon v. United States*, 474 F.3d 616, 621–23 (9th Cir. 2007) (holding that matters deemed admitted, even by default, may be relied on for summary judgment.) This usage caused confusion in the marketplace, to the detriment of both business and public health interests. (Dkt. No. 77 at 11.) Accordingly, Defendants use of Plaintiff's trademark, without its consent, easily satisfies the elements of trademark infringement under the Lanham Act. *See Arcona, Inc., v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1078 (9th Cir. 2020).

In the face of an otherwise clear trademark violation, Defendants assert that their conduct falls within the "first sale" exception. (Dkt. No. 89 at 6.) This is an affirmative defense which provides that "the owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy . . . ." 17 U.S.C. § 109(a). Courts have

---

[4] Plaintiff served Requests for Admission on October 7, 2022. (Dkt. No. 78.) Defendants did not timely respond to those requests, due on or before November 11, 2022. (*Id*.) "Failure to timely respond to requests for admissions results in automatic admission of the matters requested." *Wilson v. JPMorgan Chase, N.A.*, 2020 WL 885971, slip op. at 2 (W.D. Wash. 2020).

ORDER
C20-1096-JCC
PAGE - 10

1  interpretated this language to mean that, "only . . . the first sale of the copyrighted work" is

2  entitled to protection. *See Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010) ("[A]

3  copyright owner's exclusive distribution right is exhausted after the owner's first sale of a

4  particular copy of the copyrighted work.").

5      For obvious reasons, this exception does not apply here. Plaintiffs do not seek to limit the

6  resale or reproduction of their goods. Defendants have never actually owned or sold any of

7  Plaintiff's goods. Instead, the issue is Defendants' unauthorized use of Plaintiff's trademarks to

8  represent an affiliation with Plaintiff that did not exist, and an ability to produce goods that

9  Defendants did not have. As these facts are beyond dispute, the Court GRANTS Plaintiff

10  judgment as a matter of law on its trademark infringement and use of counterfeit marks claim.

11              b.  *Unfair Competition, False Endorsement, False Association or False*
                    *Designation of Origin Under 15 U.S.C. § 1125(a)* and *False*
12                  *Advertising Under U.S.C. § 1125(a)(1)(B)*

13      Plaintiff also asserts an unfair competition, false endorsement, or false designation of

14  origin claim under 15 U.S.C. § 1125 (a). (Dkt. No. 77 at 28.) To prevail on this claim, Plaintiff

15  must prove that Defendants, "in connection with any goods or services, or any container for

16  goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof,

17  or any false designation of origin, false or misleading description of fact, or false or misleading

18  representation of fact." 15 U.S.C. § 1125 (a)(1). A false advertising claim under § 1125 (a)(1)(B)

19  requires similar proof, plus that the defendant "in commercial advertising or promotion,

20  misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another

21  person's goods, services, or commercial activities." To prevail, Plaintiff must establish that

22  Defendants' advertisements were false or misleading and had the capacity to deceive consumers.

23  *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828–29 (9th Cir. 2011).

24      As noted above, many of these facts were already established. It is clear from the record

25  that Defendants used Plaintiff's trademark to advertise goods they never possessed, and that the

26  purpose of this use was to generate business contracts with potential customers. "Where evidence

shows that one company deliberately adopted another's name to obtain advantage from the other's good will, we may infer a likelihood of confusion." *Acad. Of Motion Picture Arts and Sci. v. Creative House Promotions*, 944 F.2d 1446, 1456 (9th Cir. 1991). Defendants' representations of their ability to supply millions of 3M respirators at inflated prices, despite not having any in stock, constitutes false advertising. They misrepresented the nature and origin of their goods in commercial promotion, violating 15 U.S.C. § 1125 (a)(1)(B).

As Plaintiff succinctly put it, Defendants "sent emails misrepresenting that they were working directly with 3M, in contact with 3M lawyers, that 3M approved of and supported Defendants' sales practices, that 3M would deliver the products, and that 3M set the prices. Defendants further used fake documents bearing 3M's name and/or the 3M Marks to support these misrepresentations." (Dkt. No. 77 at 30.) This is supported by evidence. (Dkt. Nos. 78, 79.) Defendants do not provide any admissible assertions to dispute these assertions. (*See* Dkt. No. 89 at 7.)

Accordingly, the Court GRANTS Plaintiff judgment as a matter of law on the unfair competition, false endorsement, false association or false designation of origin claim under § 1125(a) and the false advertising claim under § 1125(a)(1)(B).

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgement (Dkt. No. 77), OVERRULES Defendants' objections to the discovery orders (Dkt. Nos. 112, 122) and STRIKES as moot Defendants' objections to the withdrawals order (Dkt. No. 125).

DATED this 7th day of June.

John C. Coughenour
UNITED STATES DISTRICT JUDGE